LISA BRUNO *v.* REED WHIPPLE ET AL.
(AC 33584)

Beach, Bear and Sheldon, Js.

Argued May 17—officially released October 16, 2012

*Lisa Bruno*, pro se, the appellant (plaintiff).

*Anthony L. Cenatiempo*, with whom, on the brief, was *Stephen P. Fogerty*, for the appellee (named defendant).

### Opinion

SHELDON, J. The plaintiff, Lisa Bruno, appeals from the summary judgment rendered by the trial court in favor of the defendant Reed Whipple on her claims of breach of contract, breach of the implied covenant of good faith and fair dealing and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., in connection with the construction by the defendant Heritage Homes Construction Company, LLC (Heritage Homes),[1] a limited liability company owned by Whipple and his wife, of a new home for the plaintiff and her then husband, Stephen Bruno (Bruno), in Ridgefield. Although we affirm the court's judgment as to the plaintiff's claims of breach of contract and breach of the implied covenant of good faith and fair dealing, we reverse it as to her claim of a violation of CUTPA.

On January 27, 2010, the plaintiff filed a six count amended second revised complaint against the defendants. In the complaint, the plaintiff alleged that the

---

[1] This court dismissed the portion of this appeal in which the plaintiff challenged the trial court's granting of summary judgment in favor of Heritage Homes on two of the plaintiff's three claims against it. Because of the continuing pendency in the trial court of the plaintiff's remaining claim against Heritage Homes, on which the defendants' motion for summary judgment was denied, this court determined that the plaintiff's appeal must be dismissed in part for lack of a final judgment. Accordingly, for the purpose of this appeal, the only appellee is Whipple.

defendants, as parties to a contract with herself and Bruno to build the new home, had breached the contract and the implied covenant of good faith and fair dealing arising thereunder by conspiring with Bruno to launder his money through the project, and thus to deprive her of fair, just and reasonable alimony and division of assets in connection with the impending dissolution of her marriage. On that score, the plaintiff alleged, more particularly, that by December, 2005, when Bruno initiated marital dissolution proceedings against her, construction of the new home was nearly complete for what by then was the total sum of approximately $1,800,000. Thereafter, however, from December, 2005, to January, 2006, and from May, 2006, to July, 2006, Bruno paid the defendants additional sums totaling approximately $2,600,000, all purportedly for expenditures on the project that she did not authorize. On that basis, the plaintiff alleged that the defendants had colluded with Bruno to launder his money through the project, either by not performing all of the construction work they claimed to have performed on the project or by submitting multiple billings for the work they did perform. The plaintiff claimed as to Whipple that by engaging in such collusive conduct with Bruno, he not only breached the contract, as alleged in count one of the complaint, and the implied covenant of good faith and fair dealing arising under the contract, as alleged in count three, but he also committed unfair or deceptive acts or practices in the conduct of a trade or commerce that caused her to suffer ascertainable economic losses in violation of CUTPA, as alleged in count five.

On March 25, 2011, the plaintiff and, on March 28, 2011, the defendants filed motions for summary judgment. In support of their motion, the defendants argued, inter alia, that Whipple was entitled to judgment as a matter of law on each of the plaintiff's claims against him because all such claims were based materially upon

alleged breaches of duties arising under a contract to which he was not a party. On that score, they argued that Whipple was not identified in the contract as a party and that, although he signed the contract in his representative capacity as a member of Heritage Homes, he did not sign it in his individual capacity. In support of that argument, the defendants submitted Whipple's personal affidavit in which he averred that he had never individually entered into any contract with the plaintiff or Bruno, nor had he ever individually performed any work or provided any labor, services or material for either of them on his own behalf. In addition, with respect to the plaintiff's core allegation of wrongdoing against him in each of her claims—that he had engaged in money laundering on behalf of Bruno by returning money to him for work billed on the home construction project—Whipple averred that all work billed by Heritage Homes on the project was performed and fully paid for by Bruno pursuant to the contract, and that neither he nor Heritage Homes ever had returned any money to Bruno or laundered money for him through the project, as the plaintiff had alleged. The defendants supported their summary judgment motion with a memorandum of law and several exhibits, including Whipple's affidavit and an unauthenticated copy of the subject contract.

In opposition to the defendants' motion, the plaintiff filed, inter alia, a memorandum of law and several exhibits, including a copy of the contract that was textually identical to that submitted by the defendants and two personal affidavits.[2] As grounds for opposing the defendants' motion, the plaintiff argued, inter alia, that

[2] The first such affidavit and eleven other exhibits originally filed in support of the plaintiff's motion for summary judgment were later redesignated as exhibits in opposition to the defendants' motion in the plaintiff's memorandum of law in support of her objection to that motion, to which her second affidavit was attached.

(1) the defendants had failed to support their motion by properly authenticated documents and materials; (2) Whipple was indeed a party to the contract in his individual capacity; (3) even if Whipple signed the contract only in his representative capacity, he nonetheless should be held liable for Heritage Homes' tortious conduct, either as a direct participant in such conduct or as a person who so completely and pervasively controlled the company as to warrant piercing the corporate veil; and (4) the defendants' documented interference with her ability to keep informed of and participate in the construction project's planning and oversight after Bruno commenced marital dissolution proceedings against her, by dealing solely and exclusively with Bruno as to costly project modifications without her knowledge or consent, supports the inference that the defendants conspired with Bruno to launder his marital assets through Heritage Homes' accounts, for Bruno's benefit and to her own great financial loss.

After hearing oral argument on the parties' motions for summary judgment, the court issued a memorandum of decision in which it granted the defendants' motion as to all three of the plaintiff's claims against Whipple. As to the plaintiff's threshold claim of breach of contract, under count one of her complaint, the court relied upon the language of the contract, as submitted to it by both parties, to conclude that Whipple could not be found liable because "there is no genuine issue of [material] fact that Whipple was not a party to the contract as pleaded by the plaintiff." As to the plaintiff's claims of breach of the implied covenant of good faith and fair dealing and a violation of CUTPA, under counts three and five of her complaint, the court determined that both of those claims were also "directly dependent upon the existence of the contractual relationship"

between the plaintiff and Whipple, and thus that Whipple could not be held liable on either such claim due to his status as a nonparty to the contract. The court's determination to this effect on the plaintiff's claim of breach of the implied covenant of good faith and fair dealing was based upon both settled case law, holding that such a claim can only be asserted against a contracting party, and its conclusion that the allegations of the third count failed to state any independent basis for establishing his liability in tort. By contrast, the court's determination that the plaintiff's CUTPA claim against Whipple was directly dependent upon the existence of a contractual relationship was based simply upon its observation that all of the allegations of her breach of contract claim against him were realleged in support of the CUTPA claim.

Following the issuance of the court's decision, the defendants asked that the decision be clarified as to whether it also was intended to apply to the plaintiff's claims against Heritage Homes, which had joined with the defendant in moving for summary judgment. In response to that request, the court promptly issued a corrected memorandum of decision in which it (1) restated nearly verbatim, in the first section of the corrected decision bearing only Whipple's name and a specific reference to the three numbered counts against him (one, three and five), its prior decision granting the defendants' motion as to each such count; and then (2) proceeded, in the second section bearing only the name of Heritage Homes and a specific reference to the three numbered counts against it (two, four and six), to deny the defendants' motion with respect to count two, alleging breach of contract, but to grant the motion as to counts four and six, alleging breach of the implied covenant of good faith and fair dealing and a violation of CUTPA. With respect to counts four and six, in particular, the court concluded its analysis as

follows: "While the plaintiff has alleged conduct that would support a finding of aggravating circumstances sufficient for a CUTPA claim or a claim for breach of covenants of good faith and fair dealing, that the defendants have engaged in a scheme to launder money through . . . Bruno through the construction contract, those allegations are conclusory and supported by no facts. The defendants have challenged those assertions in their motion for summary judgment together with supporting affidavits and documents. If the plaintiff has no evidence and her supporting documents are inadequate, the court is justified in granting summary judgment provided the defendants have met their burden of proof. . . . The plaintiff must demonstrate that a genuine issue of material fact exists through 'counter affidavits and concrete evidence.' . . . The court finds that the plaintiff has failed to meet that burden." (Citations omitted.) Following the court's later denials of the plaintiff's separate motions for reargument with respect to the court's summary judgment as to Whipple and Heritage Homes, the plaintiff filed this appeal.

On appeal, the plaintiff claims, on divers grounds, that the court erred in rendering summary judgment in favor of Whipple on each of her three claims against him. We disagree with the plaintiff as to her claims of breach of contract and breach of the implied covenant of good faith and fair dealing and thus affirm the court's summary judgment on those claims. We agree, however, with the plaintiff as to her CUTPA claim and thus reverse the court's summary judgment on that claim and remand this case for further proceedings thereon.

We first set forth the applicable standard of review as to a motion for summary judgment. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Weiner* v. *Clinton*, 106 Conn. App. 379, 382–83, 942 A.2d 469 (2008).

## I

## BREACH OF CONTRACT

The plaintiff's first claim on appeal is that the court improperly rendered summary judgment in favor of Whipple on her claim of breach of contract. The plaintiff claims, more particularly, that the court improperly determined that there was no genuine issue of material fact that Whipple was not a party to the subject contract because (1) he had no right to contest her claim of breach of contract on the ground that he was not a party to the subject contract without specially pleading that claim as a special defense, (2) the court improperly considered unauthenticated evidence in reaching its

conclusion that Whipple was not a party to the contract and (3) the court improperly ignored the defendants' alleged admission, in their answer to the complaint, that Whipple was in fact a party to the contract. For the following reasons, we reject each of these arguments.

A

The plaintiff initially argues that Whipple was not entitled to seek summary judgment on the ground that he was not a party to the subject contract because he failed to plead his nonparty status as a special defense. We disagree.

"As a general rule, facts must be pleaded as a special defense when they are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . The fundamental purpose of a special defense, like other pleadings, is to apprise the court and opposing counsel of the issues to be tried, so that basic issues are not concealed until the trial is underway. . . . Whether facts must be specially pleaded depends on the nature of those facts in relation to the contested issues." (Citations omitted.) *Bennett* v. *Automobile Ins. Co. of Hartford,* 230 Conn. 795, 802, 646 A.2d 806 (1994). Consistent with this rule, and in light of its express purpose, a defendant has no obligation to specially plead facts tending to disprove any allegations of the plaintiff's complaint that he has not admitted in his answer because, by generally denying such allegations or leaving the plaintiff to her proof of them at trial, he gives the plaintiff clear notice that such allegations are disputed and will be at issue in the case.

In the present case, Whipple's assertion that he was not a contracting party is completely inconsistent with the plaintiff's factual allegations against him, which included the allegation that he was a party to the subject contract. That allegation, of course, was essential to

the plaintiff's claim of breach of contract, for it is a fundamental principle of contract law that liability for breach of contract is confined to contracting parties or those who consent to be bound by them. See *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 797, 17 A.3d 40 (2011).

Because the plaintiff had pleaded that Whipple was a party to the subject contract, he was entitled to disprove that allegation as a basis for seeking summary judgment without so pleading as a special defense.

B

The plaintiff next argues that it was improper for the court to rely on the copy of the construction contract that the defendants offered in support of their motion for summary judgment because that document was not authenticated.[3] We disagree.

Whether a trial court should consider documentary evidence submitted by a party in relation to a motion for summary judgment presents an evidentiary issue to which we apply an abuse of discretion standard. See *Wilderman* v. *Powers*, 110 Conn. App. 819, 828, 956 A.2d 613 (2008) (claim that court should not have considered unauthenticated documents in assessing motion for summary judgment presents evidentiary issue).

Both parties submitted copies of the same signed, three page "construction contract" as evidence to be

[3] Whipple contends on appeal that the issue of authentication is not reviewable because the court's summary judgment ruling did not address it. His claim is without merit. "Our review of the trial court's decision to grant the . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct . . . ." (Internal quotation marks omitted.) *Navin* v. *Essex Savings Bank*, 82 Conn. App. 255, 258, 843 A.2d 679, cert. denied, 271 Conn. 902, 859 A.2d 563 (2004). In reaching our determination, we look to the evidence in the record, and, thus, the plaintiff's claim regarding the authentication of evidence is within our purview.

considered by the court in support of their respective positions on the defendants' motion for summary judgment. Although the parties attached different documents to their respective copies of the contract,[4] the texts of the two copies, with which both the plaintiff and Whipple admittedly were familiar, were identical in all respects. Because the parties were in full agreement as to the text of the subject contract, both can be understood to have admitted by their references to it in their affidavits, briefs and arguments that the contract before the court was in fact authentic. Therefore, we conclude that the court did not abuse its discretion in considering the parties' contract when assessing the merits of the defendants' motion for summary judgment.

C

The plaintiff finally argues that, notwithstanding the language of the contract or the soundness of the court's interpretation of its essential terms, the court was bound to rule that there was at least a genuine issue of material fact as to whether Whipple was a party to it because he made a binding judicial admission to that effect in the defendants' answer to the complaint.[5] We

---

[4] The plaintiff attached as an exhibit to her motion for summary judgment, and later redesignated as an exhibit to her opposition to the defendants' motion, a Heritage Homes cover letter and a spreadsheet of projected material and labor costs. The cover letter, printed on Heritage Homes' letterhead, provides in relevant part as follows: "Dear Steve [Bruno], Enclosed please find copies of our standard construction management contract, latest budget, and sub-contractor agreement. As you are aware, our latest budget is not reflective of the new outbuilding that is currently being designed. Please let us know if you would like us to include that in our latest budget. Thanks, Reed [Whipple]." The defendants attached a similar, albeit different, expense spreadsheet to their motion but did not submit a copy of the cover letter.

[5] Whipple claims that, because the court did not address the defendants' answer specifically in its summary judgment ruling, the plaintiff's claim of admission is barred on appeal. On appeal, our review is plenary. See *Navin* v. *Essex Savings Bank*, supra, 82 Conn. App. 258. Hence, we address the plaintiff's argument that the defendants' answer constituted an admission.

disagree that Whipple made such a judicial admission, and thus we reject this aspect of the plaintiff's claim as well.

Practice Book § 10-19 provides as follows: "Every material allegation in any pleading which is not denied by the adverse party shall be deemed to be admitted, unless such party avers that he or she has not any knowledge or information thereof sufficient to form a belief." Additionally, Practice Book § 10-48 provides in relevant part: "[A]ny pleader wishing expressly to admit or deny a portion only of a paragraph must recite that portion; except that where a recited portion of a paragraph has been either admitted or denied, the remainder of the paragraph may be denied or admitted without recital. . . ."

In the present case, paragraph four of the plaintiff's complaint alleged as follows: "On October 28, 2004, the plaintiff and the defendants entered into a written contract for the construction of a private residence at 111 Spring Valley Road, Ridgefield, Connecticut, for a total price of $2,566,550.00." In their answer to the complaint, the defendants responded to the foregoing allegation as follows: "As to the allegations in Paragraph 4, the defendants admit so much of the paragraph that there was a contract to build a residence at 111 Spring Valley Road, Ridgefield, Connecticut which is dated October 28, 2004. The defendants deny the rest of the paragraph." By this response, the defendants, pursuant to Practice Book § 10-48, clearly admitted that portion of the allegation that stated that there was a contract to build the plaintiff and Bruno's new residence but just as clearly denied the remainder of the allegation, including the statement that Whipple was a party to the contract. Therefore, the defendants did not admit in their answer that Whipple was a party to the contract.

## D

Having determined that Whipple's claim that he was not a party to the contract was a proper basis for seeking summary judgment, that the contract presented to the court was properly considered by the court as evidence supporting that claim and that the defendants' answer to the complaint contained no judicial admission contradicting and requiring the rejection of that claim, we now turn to the specific language of the contract to determine if the court properly found that the plaintiff had failed to present evidence that Whipple was a party thereto. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 686, 697 A.2d 1137 (1997).

In the present case, the court found that Whipple signed the contract as a member of Heritage Homes, a limited liability company. According to the contract's terms, the only parties to it were the plaintiff and Bruno, as "the Owner," and Heritage Homes, as "the Contractor." There is no language in the contract identifying Whipple as a party thereto. On the basis of the written

contract, the undisputed terms of which were properly before it, the court thus had a substantial basis for concluding that there was no genuine issue of material fact that Whipple was not a party to that contract and thus that he could not be held liable for its breach. For all of the foregoing reasons, we agree with the court that Whipple was entitled to the rendering of summary judgment in his favor on the plaintiff's claim of breach of contract.

## II

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The plaintiff's next claim is that the court improperly rendered summary judgment in favor of Whipple as to the third count of her complaint, alleging breach of the implied covenant of good faith and fair dealing.

### A

On that score, although the plaintiff concedes, as she must, that a person cannot be held liable for breach of the implied covenant of good faith and fair dealing without being a party to a contract, she contends initially that the court erred in determining that there was no genuine issue of material fact as to whether Whipple was a party to the contract, and thus that he could not be held liable for breach of the implied covenant of good faith and fair dealing in this case. Because her argument on that issue is identical to her argument on the same issue with respect to her claim of breach of contract, it must be rejected for the reasons set forth in part I of this opinion.

### B

Even, however, if the plaintiff cannot establish Whipple's liability for breach of the implied covenant of good faith and fair dealing under her third count because he

was not a party to the subject contract, she claims that the allegations of that count are sufficient to state at least one potentially viable tort claim against Whipple as to which summary judgment should not have been granted. It was error, she claims, to have granted summary judgment as to any duly pleaded claim that was not in fact dependent upon Whipple's status as a party to the subject contract, provided that she was entitled to recover on that claim from Whipple personally, either because he participated personally in the tortious conduct upon which the claim was based or because he so completely and pervasively controlled Heritage Homes and engaged in such conduct as to warrant piercing the corporate veil and making him personally liable for such conduct. She asserts that the court erred in granting summary judgment on the third count on the basis of its stated conclusions that she had failed to plead any tort claim in that count or any facts upon which she would be entitled to recover against Whipple personally on any such claim under the doctrine of piercing the corporate veil.

The plaintiff disputes the court's finding that she failed to allege a potentially viable tort claim in her third count for two reasons. First, she claims that that finding is inconsistent with the prior ruling of a different trial court denying the defendants' motion to strike that count. According to the plaintiff, the court's ruling on the motion to strike expressly concluded that the facts alleged in that count were sufficient to state potentially viable tort claims against both defendants. Second, the plaintiff argues that, in the separate section of the court's corrected memorandum of decision which addressed the motion for summary judgment as to Heritage Homes with respect to the virtually identical claim of breach of the implied covenant of good faith and fair dealing set forth against it in the fourth count of her complaint, the court discussed her core allegations of

wrongdoing against "the defendants" in such a way as to suggest that she had in fact pleaded viable tort claims against them both.

Whipple disputes the notion that either the earlier denial of the defendants' motion to strike the third count of the plaintiff's complaint or the court's comments in its corrected memorandum of decision concerning the potential sufficiency of the allegations of the plaintiff's fourth count to support a claim of breach of the implied covenant of good faith and fair dealing against Heritage Homes lends any support to the plaintiff's present claim that the allegations of the third count are sufficient to state an independent claim against him sounding in tort. We agree.

To begin with, each ruling on which the plaintiff relies was based on the assumed or established fact that the person or entity to whom or which it applied was in fact a party to the subject contract. The ruling on the motion to strike, as addressed to the third count, was necessarily based upon the plaintiff's allegation in that count that Whipple was a party to the contract. Hence, the court's discussion in that ruling concerned only the sufficiency of the pleaded allegations to hold Whipple liable for breach of the implied covenant of good faith and fair dealing if, as a contracting party, he was shown to have engaged in the conduct alleged against him in that count. The ruling cannot be understood to have addressed the different issue of whether Whipple also could be found liable in tort based upon a subset of those allegations if he was not in fact a party to the contract.

Similarly, the court's comments about the legal sufficiency of the plaintiff's money laundering allegations against the defendants, as pleaded in her fourth count, to defeat the motion for summary judgment on that

count by Heritage Homes, concerned only the sufficiency of such allegations as "aggravating circumstances" to support a viable claim of breach of the implied covenant of good faith and fair dealing against Heritage Homes, a party to the subject contract, which was the only party named in that count. That second section of the court's corrected decision did not discuss the potential sufficiency of the allegations in question to state an independent tort claim, not based upon a contractual relationship, against either defendant. Apart, then, from loose language in the second section of the court's decision referring generally to "the defendants," rather than specifically to Heritage Homes, it is apparent that that section was never intended to apply to Whipple, whose potential liability was separately discussed in the first section of the corrected decision. Such language thus has no logical or legal bearing upon the sufficiency of the allegations of the plaintiff's third count to state a viable tort claim against Whipple as a nonparty to the contract.

Moreover, we note that the court's analysis of the challenged claim as a breach of the implied covenant of good faith and fair dealing arising under the subject contract was entirely consistent with the plaintiff's own characterization of that claim. In paragraph twenty of the third count of her complaint after repleading all nineteen paragraphs of her first count alleging breach of contract, as the first nineteen paragraphs of that count, the plaintiff pleaded simply as follows: "In the manner described above, the defendants breached their implied *contract* of good faith and fair dealing." (Emphasis added.) In light of this tellingly miswritten description by the plaintiff of her own claim, nothing could be clearer than that she intended to base that claim upon the alleged breach of covenants arising under the contract. We thus conclude that Whipple was entitled to summary judgment on this count.

## III

## VIOLATION OF CUTPA

Finally, the plaintiff asserts that the court improperly rendered summary judgment in favor of Whipple on her CUTPA claim against him, as pleaded in the fifth count of her complaint. We agree.

The entire basis upon which the court rendered summary judgment on that claim was that the allegations of the fifth count were identical to those of the plaintiff's first count alleging breach of contract and thus, assertedly, that the claim depended directly upon a contractual relationship between the plaintiff and Whipple. So concluding, the court ruled, as it had on the plaintiff's other claims against Whipple, that the CUTPA claim failed as a matter of law because there was no genuine issue of material fact that Whipple was not a party to the subject contract. The court thus never considered whether, apart from pleading a CUTPA violation against Whipple based upon his alleged breach of a personal contract with the plaintiff, the challenged count was sufficient to plead a CUTPA violation by Heritage Homes for which he could be held personally liable because he had personally engaged in the conduct by which the violation was committed. The plaintiff contends that such a claim is pleaded adequately in her fifth count and thus that the court's rendering of summary judgment in favor of Whipple on that count should be reversed.

We note at the outset that because the trial court based its order of summary judgment on the sufficiency of the allegations of the challenged count to state a potentially viable CUTPA claim rather than the sufficiency of the plaintiff's evidence to raise a genuine issue of material fact in support of such a claim in the face of the Whipple's averments to the contrary, our focus as well must be on the allegations of the challenged

count. We note that both parties have acted consistently with this approach throughout the appellate process, having focused almost exclusively on the sufficiency of the plaintiff's complaint to state a CUTPA claim from the filing of her appeal through oral argument. The plaintiff's statement of issues in her brief, for example, states in relevant part as follows: "The court erred by rendering summary judgment in favor of . . . Whipple by . . . misconstruing the plaintiff's pleadings as sounding only in contract and not tort. . . ." Moreover, in her brief addressing the CUTPA claim, the plaintiff argued that "[s]imply because a plaintiff relies upon the same or similar factual allegations to support both a breach of contract claim and a tort or statutory (CUTPA) claim, does not render the tort and/or statutory counts insufficient. Rather, the necessary inquiry is to determine whether the factual allegations are sufficient to support both claims." In response to these claims and arguments, Whipple argued in his brief as follows: "Two judges of the [S]uperior [C]ourt and the defendants read the complaint as a claim sounding in contract, and at the time the defendant[s] filed [their] motion to strike, the plaintiff agreed. The plaintiff would now have this court read her complaint in a manner that is unreasonable and inconsistent with the general theory of the case, i.e., breach of contract. As a non-party, the claims against Whipple must fail." It is apparent from the record that the parties sought and opposed reversal of the court's ruling on the plaintiff's CUTPA claim solely on the basis of the sufficiency of the plaintiff's fifth count to allege such a claim.

In evaluating the sufficiency of the pleadings, we are mindful of "[t]he modern trend, which is followed in Connecticut . . . to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint

must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Lyons* v. *Nichols*, 63 Conn. App. 761, 765, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001). "Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." (Internal quotation marks omitted.) *Stamford Landing Condominium Assn., Inc.* v. *Lerman*, 109 Conn. App. 261, 274, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008).

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Whether

a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of the circumstances which are uniquely available to the trial court. . . . Additionally, our Supreme Court has stated that [a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a less extent it meets all three." (Citation omitted; internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 413, 867 A.2d 841 (2005).

The plaintiff alleges in part in count five of her complaint that the defendants "either did not perform all of the construction work they claimed to have performed or submitted multiple billings for such work as was performed, and in fact conspired with Bruno to launder Bruno's cash and thereby deprive the plaintiff of fair, just and reasonable alimony and division of assets in connection with the dissolution of the plaintiff's marriage to Bruno." The plaintiff also alleges in count five that such conduct constitutes "unfair and deceptive acts and practices in trade and commerce in violation of [§] 42-110b . . . ."

These allegations, construed broadly and realistically, are sufficient to state a claim that Whipple, although not a party to Heritage Homes' construction contract with the plaintiff and Bruno, personally colluded with Bruno on behalf of Heritage Homes by conspiring with him to submit multiple billings for work not actually performed under the contract in order to launder Bruno's money through Heritage Homes' accounts and secretly to return it to him in order to decrease Bruno and the plaintiff's apparent marital assets. The alleged purpose and effect of this collusive behavior, for which Whipple could be held personally liable to an injured third party even if, as alleged, he

engaged in it as an officer or agent of Heritage Homes; see *Cohen* v. *Roll-A-Cover, LLC*, 131 Conn. App. 443, 467–69, 27 A.3d 1, cert. denied, 303 Conn. 915, 33 A.3d 739 (2011); was to cause the plaintiff an ascertainable loss of money or other property, which she would otherwise have received in her dissolution action upon the court's entry of its final financial orders. We conclude that such allegations of collusion and conspiracy, as pleaded, describe behavior by Whipple in the conduct of trade or commerce that, if proved at trial, would constitute a violation of CUTPA. Because such allegations are sufficient to state a viable CUTPA claim against Whipple that does not depend upon the existence of a contractual relationship between himself and the plaintiff, we reverse the trial court's rendering of summary judgment in favor of Whipple on the fifth count of the complaint.

The judgment is reversed only as to the plaintiff's claim in the fifth count of her complaint alleging a violation of CUTPA and the case is remanded for further proceedings on that claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.