******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

LISA BRUNO *v.* REED WHIPPLE ET AL.
(AC 40282)

Lavine, Keller and Elgo, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant H Co. for, inter alia, breach of contract, in connection with its construction of a new home for the plaintiff and B, her then husband. The plaintiff's breach of contract claim was predicated on H Co.'s failure to provide her with invoices on a biweekly basis and written change orders regarding modifications to the contract, which she claimed caused a diminution of her marital estate, specifically, a certain financial account that had been used as a source of funds for the construction of the new residence. The jury returned a verdict in favor of H Co. on the breach of contract claim, indicating in interrogatories that H Co. had breached its contract with the plaintiff but that the plaintiff had waived that breach. After the trial court denied the plaintiff's motion to set aside the verdict, the plaintiff appealed to this court, which concluded that the trial court improperly denied the motion to set aside the verdict in favor of H Co. on the breach of contract count concerning the jury's verdict as to waiver. This court ordered the case to be remanded for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim. Following a hearing in damages on remand, in which the trial court held that the plaintiff failed to prove that she was entitled to any damages, the plaintiff appealed to this court, claiming that the trial court exceeded the scope of the remand order and improperly concluded that she failed to prove actual damages. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly found that she failed to prove actual damages resulting from H Co.'s breach of the construction contract, which was based on her claim that had H Co. not breached the terms of its contract, the dissipated funds would have remained in the financial account earning interest and would ultimately have been distributed to the plaintiff in the dissolution of her marriage to B, and that she would have received a larger alimony award in her divorce; that court's finding that the plaintiff did not prove that her marital estate was reduced by H Co.'s breach of contract was not clearly erroneous, as the evidence in the record indicated that the funds in question were expended on construction costs of the residence, that the residence retained its value throughout the dissolution proceeding and that, following the dissolution of the plaintiff's marriage, she was awarded an equal share of the net proceeds of the sale of the residence, and the plaintiff's claims were based on conjecture and speculation as to what the dissolution court would have awarded her if the facts had been different.

2. The failure of the trial court to award nominal damages and to render judgment in favor of the plaintiff on her breach of contract count did not constitute reversible error; although the trial court's directive for judgment to be entered in favor of the defendant and against the plaintiff on the plaintiff's breach of contract count was improper in light of the prior jury verdict in favor of the plaintiff on that count, and the plaintiff was entitled to an award of nominal damages despite her failure to establish actual damages at the hearing in damages, the trial court's directive did not constitute reversible error, as the general rule that an appellate court will not reverse a judgment of the trial court for a mere failure to award nominal damages applied, and the case did not warrant an exception to that rule.

Argued September 14—officially released December 4, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Danbury, where the court, *Maronich, J.*, granted in part the defendants'

motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court, which dismissed the appeal in part, reversed the judgment in part and remanded the case for further proceedings; thereafter, the matter was tried to the jury before *Doherty*, *J.*; subsequently, the court, *Doherty*, *J.*, granted the defendants' motion for permission to file an amended answer and special defense; verdict for the defendants; thereafter, the court, *Doherty*, *J.*, denied the plaintiff's motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiff appealed to this court; subsequently, the court, *Doherty*, *J.*, issued an articulation of its decision; thereafter, this court reversed the judgment only as to the jury's verdict on the special defense of waiver and remanded the case for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim against the defendant Heritage Homes Construction Co., LLC; subsequently, following a hearing in damages, the court, *Truglia*, *J.*, rendered judgment for the defendant Heritage Homes Construction Co., LLC, from which the plaintiff appealed to this court. *Affirmed.*

*Lisa Bruno*, self-represented, the appellant (plaintiff).

*Stephen P. Fogerty*, for the appellee (defendant Heritage Homes Construction Co., LLC).

*Opinion*

ELGO, J. This case returns to us following a remand to the trial court for a hearing in damages. See *Bruno* v. *Whipple*, 162 Conn. App. 186, 130 A.3d 899 (2015), cert. denied, 321 Conn. 901, 138 A.3d 280 (2016). The self-represented plaintiff, Lisa Bruno, appeals from the judgment of the trial court rendered in favor of the defendant Heritage Homes Construction Company, LLC.[1] On appeal, the plaintiff claims that the trial court (1) improperly concluded that she failed to prove actual damages resulting from the defendant's breach of a residential construction contract and (2) exceeded the scope of the remand order.[2] We affirm the judgment of the trial court.

As this court has previously observed, the present case "arises from dealings between the parties concerning the construction by [the defendant] of a new home in Ridgefield for [the plaintiff] and her former husband, Stephen Bruno (Bruno)." Id., 188–89. In her operative complaint, the plaintiff alleged that the defendant, as a party "to a contract with herself and Bruno to build the new home, had breached the contract . . . by conspiring with Bruno to launder his money through the project, and thus to deprive her of fair, just and reasonable alimony and division of assets in connection with the impending dissolution of her marriage. On that score, the plaintiff alleged, more particularly, that by December, 2005, when Bruno initiated marital dissolution proceedings against her, construction of the new home was nearly complete for what by then was the total sum of approximately $1,800,000. Thereafter, however, from December, 2005, to January, 2006, and from May, 2006, to July, 2006, Bruno paid [the defendant] additional sums totaling approximately $2,600,000, all purportedly for expenditures on the project that she did not authorize." *Bruno* v. *Whipple*, 138 Conn. App. 496, 498–99, 54 A.3d 184 (2012). More specifically, the plaintiff alleged that the defendant breached the construction contract by failing to provide her with (1) invoices on a biweekly basis and (2) written change orders regarding modifications to the contract.

A trial was held in 2013. Following the close of evidence and at the request of the defendant, the court provided the jury with an instruction on the special defense of waiver. The court further instructed the jury to "separately answer jury interrogatories asking whether it 'f[ou]nd in favor of [the plaintiff] on her claim of breach of contract against [the defendant]' and, if so, whether '[the plaintiff] waived the breach of contract by [the defendant] . . . .' " *Bruno* v. *Whipple*, supra, 162 Conn. App. 196. The jury subsequently returned a verdict in favor of the defendant on the breach of contract claim. In so doing, the jury "expressly" based that verdict "on its answers to jury interrogatories that (1) [the defendant] had breached

its contract with the plaintiff, but (2) the plaintiff had waived that breach." Id. The trial court denied the plaintiff's subsequent motion to set aside the verdict. Id., 196–97.

On appeal, this court concluded that the trial court improperly denied the motion to set aside the verdict in favor of the defendant on the breach of contract count. As the court stated, the trial court "abused its discretion by permitting [the defendant] to raise the special defense of waiver for the first time after the close of evidence at trial, as it had not been specially pleaded, the pleadings did not allege any facts supporting an inference of waiver, and the claim that the plaintiff knowingly relinquished her contractual rights was not fully litigated at trial without objection by the plaintiff. Accordingly . . . the court should have set aside the jury's verdict as to waiver." (Footnote omitted.) Id., 207.

In light of that conclusion, this court explained that it "must now address the scope of the remand of this case to the trial court. Specifically, we must determine whether the case should be remanded for a hearing in damages on the plaintiff's breach of contract claim or whether the jury's verdict on her breach of contract claim also must be set aside and remanded for a retrial on that issue." Id., 207–208. The court noted that, "[i]n finding in favor of the plaintiff on her breach of contract claim, the jury essentially has determined liability in her favor against [the defendant] and the remaining determination is damages resulting from that breach." Id., 208. Accordingly, this court concluded that "because the improper verdict on the special defense of waiver is wholly separable from the verdict in favor of the plaintiff on her breach of contract claim . . . limiting the remand to a hearing in damages on the breach of contract verdict does not work injustice in this case." Id. The court thus ordered the case to be "remanded for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim."[3] Id., 216.

The trial court held a hearing in damages on January 26, 2017, at which the plaintiff submitted testimony from herself and James Bolan, a financial consultant employed by Charles Schwab, as well as certain documentary evidence. In her testimony, the plaintiff confirmed that her breach of contract claim was predicated on the defendant's failure to provide her with invoices on a biweekly basis and written change orders regarding modifications to the contract. The plaintiff maintained that those failures caused a diminution of her marital estate.

In its February 21, 2017 memorandum of decision, the court made a number of factual findings that are not contested in this appeal. The court found that the plaintiff and Bruno entered into the contract at issue

on October 28, 2004. The contract did not specify "a final, fixed price for construction of the residence," as the parties had agreed that the defendant would be paid for all services rendered.[4] The construction costs were paid in part from the proceeds of a construction mortgage loan; the remaining construction costs were paid with funds from a Charles Schwab financial account (Schwab account).[5] In December, 2005, Bruno commenced a dissolution action against the plaintiff. As part of that dissolution proceeding, the plaintiff and Bruno on July 10, 2006, entered into a written stipulation to complete the construction of the residence. The residence ultimately was completed and a certificate of occupancy issued on July 28, 2006. The final cost of construction, including land, totaled $7,746,462.[6]

In its memorandum of decision, the trial court also found that the plaintiff's marriage to Bruno was dissolved on March 17, 2008. As part of that judgment of dissolution, the dissolution court ordered that the net proceeds of the sale of the newly constructed residence shall be "divide[d] equally" between the plaintiff and Bruno. The dissolution court further found that, at the time of dissolution, the residence had a fair market value of $7.9 million. The dissolution court also awarded the plaintiff weekly alimony in the amount of $4000, culminating upon the death of the plaintiff or Bruno, or the remarriage of the plaintiff. With respect to the Schwab account that had been used as a source of funds for the construction of the new residence, the dissolution court found that it had a current balance of $2,451,343.62. As part of its financial orders, the dissolution court awarded the plaintiff $300,000 from that account and ordered that $22,826 be paid from that account to the defendant for an outstanding invoice. The dissolution court then ordered the remainder of the Schwab account "to be divided equally between" the plaintiff and Bruno.

In her complaint, the plaintiff alleged in relevant part that the defendant's breach of contract deprived her "of fair, just and reasonable alimony and division of assets in connection with the dissolution of [her] marriage to Bruno." In ruling on the issue of damages, the court thus stated that "the plaintiff's claim for damages [on the breach of contract count] is measured by the amount that the marital estate was diminished as a direct and proximate result of [the defendant's] failure to provide her with biweekly invoices and change orders." The court found, "after careful review of the evidence introduced at the hearing in damages . . . that the plaintiff has not proven (and cannot prove from the evidence presented) that the marital estate was reduced by [the defendant's] breach of contract. The 'missing' funds [from the Schwab account] were paid to [the defendant] to satisfy invoices for services rendered and materials furnished in constructing the [new residence]. . . . The plaintiff introduced no evidence at

the hearing in damages to contradict this finding. The [new residence] retained the value of the cash expended in its construction and remained a significant asset of the marital estate available for distribution to the plaintiff." (Citation omitted.) The court also rejected the plaintiff's ancillary claim that, but for the alleged diminution of the marital estate due to the defendant's breach of contract, she would have received a larger award of alimony and property distribution. In this regard, the court found that the plaintiff's claim was "entirely too speculative," as it was predicated solely on a "projection" of what the court in the dissolution proceeding "*likely would have awarded to her* if facts had been different in her dissolution of marriage action." (Emphasis in original.) The court therefore concluded that the plaintiff had "failed to prove by a preponderance of the evidence that she is entitled to any damages on her breach of contract claims . . . ." For that reason, the court stated that "judgment enters in favor of [the defendant] and against the plaintiff."[7] From that judgment, the plaintiff now appeals.

I

The plaintiff claims that the court improperly found that she failed to prove actual damages resulting from the defendant's breach of the construction contract. We disagree.

It is well established that "[t]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [W]hether the decision of the trial court is clearly erroneous . . . involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gianetti* v. *Norwalk Hospital*, 304 Conn. 754, 780, 43 A.3d 567 (2012). In addition, we note that the plaintiff bears the burden of proving the extent of the damages suf-

fered in a breach of contract action. *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 224, 990 A.2d 326 (2010).

As the plaintiff acknowledges in her principal appellate brief, her theory of damages pertains to the dissipation of marital funds in the Schwab account. Following a hearing at which it received both documentary and testimonial evidence, the trial court found that the funds withdrawn from that account all were "paid to [the defendant] to satisfy invoices" regarding the construction of the residence. The court further found that "[t]he plaintiff introduced no evidence . . . to contradict this finding." On our review of the record, we cannot say that those findings are clearly erroneous.

The court further found that the newly constructed residence "retained the value of the cash [from the Schwab account] expended in its construction and remained a significant asset of the marital estate available for distribution to the plaintiff." That finding too is substantiated by the evidence in the record before us. In its March 17, 2008 memorandum of decision, which was admitted into evidence as a full exhibit at the hearing in damages, the dissolution court found that the total cost of construction of the residence was $7,746,462.08 and that the fair market value of that property at the time of dissolution was $7,900,000. The plaintiff provided no evidence that the property lost any value between the time that the funds from the Schwab account were expended on construction costs and the date of dissolution. As the dissolution court noted in its memorandum of decision, the plaintiff, at the time of dissolution, averred that "the value of this property is $7,777,433"—approximately $31,000 *more* than the total cost of construction.

On appeal, the plaintiff claims that, if the defendant had not breached the terms of its contract, (1) "the dissipated funds would have remained safely in the Schwab account earning interest and would ultimately have been required to be distributed in [the] plaintiff's divorce" and (2) she would have received a larger alimony award due to the existence of those additional funds in the Schwab account. (Emphasis omitted.) Those contentions are entirely speculative. See *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, 277 Conn. 21, 35, 889 A.2d 785 (2006) (award of damages may not be based on conjecture); *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005) ("[s]peculation and conjecture have no place in appellate review"). As the trial court aptly noted in its memorandum of decision, the plaintiff's contentions are little more than conjecture as to what the dissolution court would have awarded her "if facts had been different" in her dissolution proceeding.

Moreover, the plaintiff's claim that the dissolution court would have altered its financial orders had funds

from the Schwab account not been expended on construction costs without her approval overlooks the fact that the plaintiff raised that very issue in the dissolution proceeding. The record before us indicates that she filed a "Motion for Order—Pendente Lite" on January 17, 2006, in which she alleged in relevant part that "[s]ince the commencement of this [dissolution] action [Bruno] has continued with the construction of the new [residence], unilaterally expending large sums of marital assets . . . without the knowledge and consent of the [plaintiff]." She therefore requested an order prohibiting Bruno from making any further expenditures without her written consent. Months later, the plaintiff entered into a stipulation with Bruno to complete the construction of the new residence. The plaintiff subsequently filed a motion for contempt regarding Bruno's alleged noncompliance with the terms of that stipulation. In its decision, the dissolution court specifically found that "there has been no evidence presented that the amount spent [on construction costs] constituted a dissipation of marital assets."

The record also indicates that the plaintiff filed a second motion for contempt with the dissolution court predicated on an alleged violation of the automatic order prohibiting the sale, transfer, or disposal of marital property. See generally Practice Book § 25-5 (b) (1). In that motion, the plaintiff alleged that Bruno had violated that order since the commencement of the dissolution by refusing "to keep [her] involved in the construction" of the new residence and by "unilaterally [making] decisions to spend huge sums of money which were *never previously contemplated, discussed or approved by the [plaintiff]*."[8] (Emphasis in original.) The dissolution court denied that motion for contempt on March 17, 2008—the very same day that it dissolved the marriage and entered its financial orders. The dissolution court, therefore, was well aware of the plaintiff's allegations regarding the payment of construction costs during the pendency of the divorce. Indeed, that court, in fashioning its financial orders, awarded the plaintiff the lump sum of $300,000 from the Schwab account prior to dividing the remainder equally between her and Bruno. That order may well have been issued in response to the plaintiff's repeated claims regarding the unauthorized payment of construction costs from the Schwab account. On the record before us, we cannot conclude, without resort to conjecture, that the dissolution court would have granted the plaintiff a greater property distribution or alimony award had the funds from the Schwab account not been expended on the construction costs in question.

Furthermore, the plaintiff did not adduce evidence at the hearing in damages that her claimed damages were the foreseeable result of the defendant's failure to provide her with invoices on a biweekly basis and written change orders regarding modifications to the

contract. As our Supreme Court has explained, "[i]n an action founded . . . on breach of contract . . . the recovery of the plaintiffs [is] limited to those damages the defendant had reason to foresee as the probable result of the breach at the time when the contract was made." *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 689 n.3, 508 A.2d 438 (1986); see also *Meadowbrook Center, Inc.* v. *Buchman*, 149 Conn. App. 177, 188–89, 90 A.3d 219 (2014) ("under Connecticut law, the causation standard applicable to breach of contract actions asks . . . whether [the plaintiff's damages] were foreseeable to the defendant and naturally and directly resulted from the defendant's conduct").

The evidence in the record does indicate that the funds in question from the Schwab account were expended on construction costs of the new residence, as the trial court found. The evidence further indicates that the new residence retained its value throughout the dissolution proceeding and that, following the dissolution of her marriage to Bruno, the plaintiff was awarded an equal share of the net proceeds of the sale of that residence. We therefore conclude that the court's finding that the plaintiff "has not proven . . . that the marital estate was reduced by [the defendant's] breach of contract" is not clearly erroneous. Accordingly, the court properly determined that the plaintiff had not met her burden in demonstrating entitlement to her claimed damages.

## II

The plaintiff also contends that the court committed reversible error by exceeding the scope of the remand order when it directed judgment to enter "in favor of the defendant and against [the] plaintiff" on the breach of contract count of the complaint.[9] We agree that the court's directive was improper in light of the prior jury verdict in favor of the plaintiff on that count. Guided by the precedent of our Supreme Court, we nonetheless conclude that the court's directive does not constitute reversible error under the facts of this case.

"Determining the scope of a remand is a matter of law because it requires the trial court to undertake a legal interpretation of the higher court's mandate in light of that court's analysis. . . . Because a mandate defines the trial court's authority to proceed with the case on remand, determining the scope of a remand is akin to determining subject matter jurisdiction. . . . We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . .

"Well established principles govern further proceedings after a remand by this court. In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted *in light of the opinion*. . . . This is the guiding principle that

the trial court must observe. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . . The trial court cannot adjudicate rights and duties not within the scope of the remand. . . . It is the duty of the trial court on remand to comply strictly with the mandate of the appellate court according to its true intent and meaning. No judgment other than that directed or permitted by the reviewing court may be rendered . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Brundage*, 320 Conn. 740, 747–48, 135 A.3d 697 (2016).

In the present case, the jury completed interrogatories indicating that it found that the defendant "had breached its contract" with the plaintiff. *Bruno* v. *Whipple*, supra, 162 Conn. App. 196. Yet those completed interrogatories also demonstrate that the jury never determined the amount of damages sustained by the plaintiff as a result of that breach. Rather, after finding that the plaintiff had waived her breach of contract claim, the jury proceeded to enter a verdict in favor of the defendant.[10] In light of that procedural history, this court explained that "[i]n finding in favor of the plaintiff on her breach of contract claim, the jury essentially has *determined liability* in her favor against [the defendant] and *the remaining determination is damages resulting from that breach.*" (Emphasis added.) Id., 208. Put simply, the plaintiff's damages in this case never were determined by the jury.

Because the jury's verdict in favor of the plaintiff on the breach of contract count was "wholly separable" from the jury's improper verdict on the special defense of waiver, the court concluded that "limiting the remand to a hearing in damages on the breach of contract verdict does not work injustice in this case." Id. The court thus remanded the case "for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim." Id., 216; accord *Channing Real Estate, LLC* v. *Gates*, 326 Conn. 123, 132, 161 A.3d 1227 (2017) ("[w]hen no question of liability remains . . . the appropriate scope of the remand is limited to a hearing in damages").

"[T]he underlying purpose of a hearing in damages is to assist the trial court in determining the amount of damages to be awarded." (Internal quotation marks omitted.) *Catalina* v. *Nicolelli*, 90 Conn. App. 219, 222–23, 876 A.2d 588 (2005). When the liability of a defendant has been established, "the plaintiff's burden at a hearing in damages is limited to proving that the amount of damages claimed is derived from the injuries suffered and is properly supported by the evidence." *Murray* v. *Taylor*, 65 Conn. App. 300, 335, 782 A.2d 702, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001). In addition to the precise quantum of damages, a plaintiff in a

breach of contract action must prove that the damages "were foreseeable to the defendant and naturally and directly resulted from the defendant's conduct." *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 188–89.

Accordingly, while a defendant may not challenge the issue of its liability at a hearing in damages, it nevertheless remains free to contest the issues of both the amount of the plaintiff's breach of contract damages and whether those damages derive from the defendant's conduct. It is well established that the "[d]etermination of damages necessarily contemplates a finding that the breach was the cause of the damages claimed." *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 314, 541 A.2d 858 (1988); see also *National Market Share, Inc.* v. *Sterling National Bank*, 392 F.3d 520, 525 (2d Cir. 2004) ("[c]ausation is an essential element of damages in a breach of contract action"); *Calig* v. *Schrank*, 179 Conn. 283, 286, 426 A.2d 276 (1979) ("[i]t is hornbook law that to be entitled to damages in contract a plaintiff must establish a causal relation between the breach and the damages flowing from that breach"); *Meadowbrook Center, Inc.* v. *Buchman*, supra, 149 Conn. App. 186 ("proof of causation . . . properly is classified as part and parcel of a party's claim for breach of contract damages"); 3 Restatement (Second), Contracts § 346 (1981) (in order to receive anything other than nominal damages, party must prove both that breach of contract "caused" loss and amount of loss).

For that reason, a trial court does not violate public policy or otherwise undermine the validity of a prior determination of liability by permitting the defendant at a hearing in damages to offer evidence disputing the existence of damages resulting from its breach of contract. As our Supreme Court explained years ago, even when liability on the part of a defendant has been established, "[i]t does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive." *United National Indemnity Co.* v. *Zullo*, 143 Conn. 124, 130, 120 A.2d 73 (1956); see also *Mackin* v. *Mackin*, 186 Conn. 185, 190, 439 A.2d 1086 (1982) ("[t]o sustain an award of substantial damages requires a showing of an actual, as opposed to a mere technical injury").

Following a hearing at which the plaintiff was afforded ample opportunity to present evidence relevant to the issues at hand, the court in the present case found that she had not met her burden in demonstrating that the defendant's conduct, in failing to furnish invoices on a biweekly basis and written change orders, caused the diminution of her marital estate as alleged in the operative complaint. In part I of this opinion, we

concluded that this finding was not clearly erroneous. The court, therefore, properly declined to award the actual damages claimed by the plaintiff.

It nevertheless remains that the jury found that the defendant "had breached its contract with the plaintiff"; *Bruno* v. *Whipple*, supra, 162 Conn. App. 196; thereby establishing the liability of the defendant. Id., 208. When a plaintiff can demonstrate a technical breach of contract, but no pecuniary damages resulting therefrom, the plaintiff "is entitled to nominal damages . . . under its breach of contract claim."[11] *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 254, 919 A.2d 421 (2007). That precept is consistent with the rule that "[w]here the [trier of fact] has found that the plaintiff has suffered a technical legal injury, the plaintiff is entitled to at least nominal damages." *Lyons* v. *Nichols*, 63 Conn. App. 761, 768, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001); see also *Wasko* v. *Manella*, 87 Conn. App. 390, 400 n.8, 865 A.2d 1223 (2005) ("[n]ominal damages are recoverable where there is a breach of a legal duty or the invasion of a legal right and no actual damages result or where, as here, such damages are not proven"); *News America Marketing In-Store, Inc.* v. *Marquis*, 86 Conn. App. 527, 535, 862 A.2d 837 (2004) ("[i]f a party has suffered no demonstrable harm . . . that party may be entitled . . . to nominal damages for breach of contract"), aff'd, 276 Conn. 310, 885 A.2d 758 (2005). Because the defendant's liability was established by the jury verdict in favor of the plaintiff on the breach of contract count, the plaintiff was entitled to an award of nominal damages despite her failure to establish actual damages at the hearing in damages. The defendant in this appeal has provided no authority to the contrary. The trial court, therefore, erroneously directed judgment to enter in favor of the defendant in this case.

The remaining question is whether that improper determination constitutes reversible error. In answering that query, we are mindful that our Supreme Court repeatedly has applied the general rule that it "will not reverse" a judgment of the trial court "for a mere failure to award nominal damages." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 37, 761 A.2d 1268 (2000); see also *Riccio* v. *Abate*, 176 Conn. 415, 418–19, 407 A.2d 1005 (1979); *Sessa* v. *Gigliotti*, 165 Conn. 620, 622, 345 A.2d 45 (1973); *Went* v. *Schmidt*, 117 Conn. 257, 259–60, 167 A. 721 (1933). This court has adhered to that precedent. See, e.g., *NPC Offices, LLC* v. *Kowaleski*, 152 Conn. App. 445, 458, 100 A.3d 42 (2014), rev'd on other grounds, 320 Conn. 519, 131 A.3d 1144 (2016); *Rossman* v. *Morasco*, 115 Conn. App. 234, 243 n.7, 974 A.2d 1, cert. denied, 293 Conn. 923, 980 A.2d 912 (2009); *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 635 n.10, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009); *Hughes* v. *Lamay*, 89 Conn.

App. 378, 386 n.7, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005); *DeVito* v. *Schwartz*, 66 Conn. App. 228, 237, 784 A.2d 376 (2001).

The rationale for that general rule against reversal is that "[n]ominal damages mean no damages at all. They exist only in name, and not in amount." (Internal quotation marks omitted.) *Beattie* v. *New York, N. H. & H. R. Co.*, 84 Conn. 555, 559, 80 A. 709 (1911); accord *DeVito* v. *Schwartz*, supra, 66 Conn. App. 237 ("nominal damages . . . imply the smallest appreciable quantity . . . with one dollar being the amount frequently awarded. The law . . . does not concern itself with trifles . . . and a judgment for [the] plaintiff will not be reversed on appeal for a failure to award nominal damages, even though [the] plaintiff is entitled to recover nominal damages as a matter of law" [internal quotation marks omitted]). Furthermore, the Supreme Court has applied that general rule in cases involving liability for a technical breach of contract. As the court explained in *Waicunas* v. *Macari*, 151 Conn. 134, 139, 193 A.2d 709 (1963), "[e]ven though the failure of the defendants to do the work might be considered a technical breach of the contract, the plaintiff has suffered no actual damage, and no injustice was done to him when he was denied recovery . . . . The failure to award nominal damages would not justify a reversal of the judgment."

Like the present case, *Riccio* v. *Abate*, supra, 176 Conn. 415, involved a hearing in damages following a finding of liability on the part of the defendants. As our Supreme Court noted, "[t]he issue of liability had been previously decided . . . and, therefore, the [finder of fact] had before [it] only a hearing in damages. The defendants were found liable by the [finder of fact] and the effect of their liability was to establish the fact that a technical legal injury had been done by them to the plaintiff, and this entitled the plaintiff to at least nominal damages." Id., 418–19. The court nevertheless recognized the general rule that it will not reverse a judgment of the trial court "for a mere failure to award nominal damages." Id., 419. Because the case did not warrant an exception to that rule, the court concluded that "it was not reversible error that the plaintiff was not awarded nominal damages"; id.; despite the fact that judgment had been rendered in favor of the defendants by the court. Id., 417. That logic applies equally to the present case. We therefore conclude that the failure of the trial court to award nominal damages and render judgment in favor of the plaintiff on her breach of contract count does not constitute reversible error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Reed Whipple, who at all relevant times was the owner of Heritage Homes Construction Company, LLC, also was named as a defendant in the plaintiff's complaint. Prior to trial, the court rendered summary judgment in favor of Whipple on the breach of contract and breach of the implied

covenant of good faith and fair dealing counts of the operative complaint, which judgment this court affirmed. See *Bruno* v. *Whipple*, 138 Conn. App. 496, 504–513, 54 A.3d 184 (2012). A jury thereafter returned a verdict in favor of Whipple on the third and final count against him, which alleged a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The trial court subsequently denied the plaintiff's posttrial motion to set aside that verdict, and this court affirmed the propriety of that determination on appeal. See *Bruno* v. *Whipple*, supra, 162 Conn. App. 209–12.

The present appeal does not involve any claim against Whipple. Rather, it pertains only to the breach of contract count against Heritage Homes Construction Company, LLC. For that reason, we refer to Heritage Homes Construction Company, LLC, as the defendant in this appeal.

[2] The plaintiff also alleges that the court improperly denied her request for an award of attorney's fees pursuant to General Statutes § 42-150bb. We decline to review that inadequately briefed claim. See *Brady-Kinsella* v. *Kinsella*, 154 Conn. App. 413, 420 n.6, 106 A.3d 956 (2014), cert. denied, 315 Conn. 929, 110 A.3d 432 (2015). We further conclude that the plaintiff's claims that the court violated her constitutional rights to procedural and substantive due process during the hearing in damages are unfounded and do not merit substantive discussion.

[3] The rescript to that decision states in full: "The judgment is reversed only as to the jury's verdict on the special defense of waiver and the case is remanded for a hearing in damages on the jury's verdict in favor of the plaintiff on her breach of contract claim. The judgment is affirmed in all other respects." *Bruno* v. *Whipple*, supra, 162 Conn. App. 216.

[4] At the hearing in damages, a copy of the construction contract at issue was admitted into evidence. That contract does not specify any price. Instead, it provides in relevant part that the plaintiff and Bruno agree "to pay for all work, labor, and materials" provided by the defendant.

[5] At the hearing in damages, the plaintiff testified that "the bulk of our liquid [marital] assets" had been held in the Schwab account.

[6] It is undisputed that approximately $1.1 million of that total cost was expended on land acquisition.

[7] The judgment file likewise states in relevant part that "judgment is entered in favor of [the defendant] on [the breach of contract count] of the complaint."

[8] At oral argument before this court, the plaintiff acknowledged that she had raised the issue of Bruno's allegedly improper expenditure of funds from the Schwab account during the dissolution proceeding.

[9] In her appellate brief, the plaintiff also claims that the court (1) "violated public policy," (2) effectively opened and set aside the jury's verdict, (3) violated the doctrines of res judicata and collateral estoppel, and (4) "lacked jurisdiction to hear evidence or argument of [the defendant's] new unplead[ed] theories." Resolution of those intertwined claims is subsumed by our analysis of her principal contention that the court exceeded the scope of the remand order.

[10] The fourth interrogatory on the jury interrogatory form stated: "We find that [the plaintiff] waived the [b]reach of [c]ontract by [the defendant]." The jury foreperson checked the "Yes" box under that interrogatory. The jury interrogatory form then instructed: "If Yes, go to [the defendant's] Verdict Form." In accordance with that instruction, the jury foreperson signed the defendant's verdict form, which stated: "In this case, we the jury find the issues in favor of [the defendant]."

Had the jury answered the fourth interrogatory in the negative, the form directed it to proceed to a fifth interrogatory, which asked the jury to specify "the amount of [c]ompensatory [d]amages as against [the defendant]."

[11] Nominal damages have been defined as "a trivial sum of money awarded to a litigant who has established a cause of action but has not established that he is entitled to compensatory damages." 4 Restatement (Second), Torts § 907, p.462 (1979). "Nominal damages are usually fixed at one cent, one dollar, or some similar small amount. . . . While no exact standard has been fixed as to what amount should be given as nominal damages, it must be insubstantial, a few cents or dollars." (Internal quotation marks omitted.) *Hartford* v. *International Assn. of Firefighters, Local 760*, 49 Conn. App. 805, 816 n.7, 717 A.2d 258, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998).