STAMFORD LANDING CONDOMINIUM
ASSOCIATION, INC. *v.* CHARLENE
LERMAN ET AL.
(AC 29225)

Bishop, Lavine and Foti, Js.

Argued April 15—officially released July 22, 2008

*Edward Kanowitz,* for the appellant (named defendant).

*Gerald S. Knopf,* for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant Charlene Lerman[1] appeals from the judgment of the trial court, rendered in favor of the plaintiff, Stamford Landing Condominium Association, Inc., in an action to foreclose a statutory lien for an unpaid debt levied against her pursuant to General Statutes § 47-258 of the Common Interest Ownership Act.[2] On appeal, the defendant claims that the court

---

[1] The other defendants have been defaulted for failure to appear, to plead or to disclose a defense. They are not parties to this appeal. We therefore refer in this opinion to Lerman as the defendant.

[2] The Common Interest Ownership Act, General Statutes § 47-200 et seq., is a comprehensive legislative scheme that governs creation, organization and management of all forms of common interest communities. See *Fruin* v. *Colonnade One at Old Greenwich Ltd. Partnership,* 237 Conn. 123, 130, 676 A.2d 369 (1996).

General Statutes § 47-258 (a) provides in relevant part: "The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner. . . ."

improperly concluded that (1) the plaintiff fined her in accordance with the requirements of General Statutes § 47-244 (a) (11) and the plaintiff's declaration,[3] (2) the plaintiff's rule prohibiting tenants from keeping dogs was enforceable and (3) the affidavit of debt submitted by the plaintiff after trial did not improperly exceed the scope of the pleadings. We affirm in part and reverse in part the judgment of the trial court.

The record includes the following relevant facts and procedural history. The plaintiff is a Connecticut corporation comprised of the unit owners of a condominium complex known as The Village at Stamford Landing (the village) and incorporated in 1987. In 1991, the defendant bought a unit at the village that, by 2003, she had begun renting to a tenant, Georgia Harbison. In August, 2003, the plaintiff's board of directors (board) received a complaint that Harbison was keeping a dog in violation of the plaintiff's rules. At the instruction of the board, the plaintiff's managing agent, Michael Hibbert, investigated the situation. On August 21, 2003, as a result of the investigation, the plaintiff mailed the defendant a letter, informing her that Harbison was keeping a dog in the unit in violation of the plaintiff's rules. The letter notified the defendant that if the dog was not removed from the premises by September 1, 2003, fines of $25 per day would be imposed.

On September 5, 2003, Francis J. Browne, acting as the defendant's attorney, telephoned and conversed with Hibbert about the August 21, 2003 letter. Immediately thereafter, Browne sent the plaintiff a letter contesting the enforceability of the plaintiff's rules regarding pets. On September 9, 2003, the plaintiff mailed Browne a letter reiterating that Harbison did

---

[3] "Declaration" means any instruments, however denominated, that create a common interest community, including any amendments to those instruments. General Statutes § 47-202 (13).

"not have the right to have the dog on the property." The plaintiff, however, extended a grace period to the defendant, allowing her until October 10, 2003, to see that the dog was removed, after which fines would begin to accrue. On October 14 and 24, 2003, the plaintiff sent letters to the defendant in which it advised that fines were being imposed but that the defendant could be heard on the matter at the next board meeting on November 3, 2003. The defendant did not attend the board meeting. On November 5, 2003, the plaintiff informed the defendant that the fines were continuing, that legal fees were being added to her account and that foreclosure proceedings would be instituted on the accumulating fines if the dog was not removed from her unit.

On July 1, 2004, the plaintiff commenced an action, pursuant to § 47-258, to foreclose a statutory lien on the defendant's unit. The complaint stated that as of July 1, 2004, the defendant had failed to pay duly authorized fines, common charges and late fees amounting to "a minimum of $4,213.12, plus costs of collection." The first count of the complaint alleged unpaid common charges. The second count alleged unpaid fines resulting from the violation of the plaintiff's rules. At the time the complaint was served, the defendant allegedly owed the plaintiff $553.12 in common charges, $2225 for fines relating to the pet violation and $1435 for the plaintiff's attorney's fees. During the pendency of the action, the defendant made sporadic payments to the plaintiff for common charges. When the trial to the court began, the defendant's account was again in arrears. On January 11 and 12, 2007, a trial was held before the court. The plaintiff provided documentary and testimonial evidence regarding the defendant's debts. Hibbert also testified about problems at the village relating to dogs.

At trial, the defendant presented no evidence to contradict the plaintiff's claim for unpaid common charges and late fees relating to them. The court determined that the plaintiff's rules and regulations prohibited tenants from housing pets and that the plaintiff properly provided the defendant with notice and an opportunity for a hearing. To ensure that the hearing requirement was satisfied prior to the levying of fines, the court excluded fines assessed prior to the November 3, 2003 board meeting. Ultimately, the court concluded that the plaintiff had proven its entitlement to foreclose its lien on the defendant's unit.

On the basis of its findings, the court calculated that the defendant owed the plaintiff $1700 in unpaid fines, $14,040 in attorney's fees and an undetermined amount in common charges. In a memorandum of decision, the court directed the plaintiff to submit an updated affidavit of the remaining debt owed to it by the defendant. On July 30, 2007, the plaintiff submitted an affidavit of debt listing the following debts: common charges of $705.85, an unpaid portion of a garage assessment of $882.59 and late fees of $575. On August 2, 2007, the court issued a supplemental memorandum of decision in which it added the previously determined debt of $15,740 to the $2163.44 listed on the posttrial affidavit for a total of $17,903.44 owed by the defendant to the plaintiff. This appeal followed.

I

The defendant first claims that the court improperly determined that the plaintiff was authorized to levy fines against her. Specifically, she alleges that the plaintiff failed to follow the procedural requirements set forth in § 47-244 (a) (11) and in the condominium declaration.[4] We do not agree.

[4] Alternately, the defendant claims that the plaintiff selectively enforced a previously unenforced rule against her when it fined her for violating the pet prohibition. At trial, Hibbert testified, however, that unit owners other

A

The defendant asserts that the plaintiff violated § 47-244 (a) (11)[5] by failing to provide her with proper notice and an opportunity to attend a hearing before levying fines against her.[6] The record indicates otherwise.

The question of whether a party has been provided notice and an opportunity to be heard is a factual issue to be determined by the trial court. See *Lynch* v. *Lynch*, 13 Conn. App. 433, 436, 537 A.2d 503 (1988). "[W]here the factual basis of the court's decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Owens* v. *New Britain General Hospital*, 229 Conn. 592, 609, 643 A.2d 233 (1994).

In this case, the record indicates that the plaintiff provided the defendant with sufficient notice of the impending daily fines as well as an opportunity to be

than the defendant had been fined for violations of the rules that pertain to dogs. The court found this testimony credible.

[5] General Statutes § 47-244 (a) (11) provides that an association may "[i]mpose charges or interest or both for late payments of assessments and, after notice and opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws, rules and regulations of the association . . . ."

[6] The defendant additionally asserts that the plaintiff failed to demonstrate that the fines levied against her, including attorney's fees, were reasonable pursuant to § 47-244 (a) (11). Because this claim is unaccompanied by analysis, we decline to afford it review. "Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005).

heard on the matter of Harbison's dog. The defendant received at least two letters advising her that she could be heard at the November 3, 2003 board meeting before the disputed fines were levied. The fact that she did not attend the meeting does not nullify the plaintiff's invitation. Moreover, the court's exclusion of all fines assessed prior to November 3, 2003 assures that the hearing requirement was satisfied prior to the levying of fines. Contrary to the defendant's position, the evidence establishes that the plaintiff supplied the defendant with notice and an opportunity to be heard.

## B

The defendant also insists that the plaintiff levied fines against her in violation of the notice requirements of its declaration. The interpretation of a condominium's declaration presents a question of law. 15A Am. Jur. 2d, Condominiums and Cooperative Apartments § 8 (2000); see *Weldy* v. *Northbrook Condominium Assn., Inc.*, 89 Conn. App. 581, 874 A.2d 296 (2005), rev'd on other grounds, 279 Conn. 728, 904 A.2d 188 (2006). Our standard of review is thus plenary.

This court recently has stated that "[t]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter. . . . Notice is not a rigid concept. Section 2 of the Restatement (Second) of Judgments, entitled 'Adequate Notice' . . . explains that [t]he modern approach to notice-giving attaches primary importance to actual notice and treats technical compliance with notice procedures as a secondary consideration." (Citations omitted; internal quotation marks omitted.) *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 622–23, 902 A.2d 24 (2006).

The defendant argues that the letters mailed to her by the plaintiff failed to incorporate all of the elements

mandated by article XXIV, § 2, of the plaintiff's declaration.[7] Specifically, she claims that the date, time and place of the hearing and the rules of procedure to be followed during the hearing were missing from the notice she received. Our review of the pertinent correspondence apprises us that the letters dated October 14 and 24, 2003, invited the defendant to attend the November 3, 2003 board meeting. In light of the fact that the defendant was familiar with the location, layout and procedures of the village, the letters' omission of the exact time and location of the meeting was not problematic. As to the rules of procedure that the defendant claims were missing, article XXIV, § 2, of the declaration does not mandate that such information be contained in the notice. Furthermore, Browne's calling Hibbert on September 5, 2003, to discuss the August 21, 2003 letter proves that the defendant received actual notice. See *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 111, 897 A.2d 58 (2006). We must agree with the court's conclusion that the plaintiff satisfied the requirements of its declaration in providing notice to the defendant.

## II

The defendant next claims that the court improperly deemed valid the plaintiff's rule prohibiting tenants from housing dogs at the village. In particular, she contends that because the rule comprises a restriction on

---

[7] Article XXIV, § 2, of the plaintiff's declaration provides in relevant part: "Whenever the instruments require that an action be taken after 'notice and hearing,' the following procedures shall be observed. The party proposing to take the action . . . shall give written notice of the proposed action to all unit owners or occupants of units whose interest would be significantly affected by the proposed action. The notice shall include a general statement of the proposed action and the date, time and place of the hearing. At the hearing, the affected person shall have the right, personally or through a representative, to give testimony orally, in writing or both (as specified in the notice), subject to reasonable rules of procedure established by the party conducting the meeting to assure a prompt and orderly resolution of the issues."

use that is not contained in the declaration, § 47-244 (c) (1) bars its enforcement.[8] We do not agree.

This claim turns on our construction of § 47-244 (c) (1). "The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 806–807, 936 A.2d 295 (2008).

General Statutes § 47-244 (c) (1) provides in relevant part: "Unless otherwise permitted by the declaration or this chapter, an association may adopt rules and regulations that affect the use or occupancy of units that may be used for residential purposes only to: (A) Prevent any use of a unit which violates the declaration; (B) Regulate any occupancy of a unit which violates the declaration or adversely affects the use and enjoyment of other units or the common elements by other unit owners . . . ."

We agree with the defendant's position that an association's power to adopt rules and regulations restricting the use of units is not unlimited. Indeed, § 47-244 (c)

---

[8] The defendant also alleged that the plaintiff's "new dog policy" is ambiguous. Irrespective of any claimed ambiguity in the "new dog policy," the plaintiff's rules and regulations barred Harbison from keeping a dog.

(1) outlines the exceptions to the general proscription against associations adopting rules that restrict the use of residential units. We concur with the court, however, that § 47-244 (c) (1) (B) allows precisely for the rule disputed here, which provides that "[n]o tenant may house pets of any kind on the premises." The court concluded that "rules concerning pets fall squarely within the powers of a condominium association" and specifically noted § 47-244 (c) (1) (B).

Although the defendant insists that the plaintiff has failed to show the adverse effects that would trigger the application of § 47-244 (c) (1) (B), the record indicates otherwise. Hibbert's testimony that the plaintiff had received complaints about dogs over the years and that the village had experienced problems relating to canine waste and damage to the grounds caused by "dogs running amuck," established the existence of adverse effects on unit owners. It is clear to us that the disputed rule, which serves to regulate the occupancies of units that adversely affect other unit owners' enjoyment of the common elements, is valid under the purview of § 47-244 (c) (1) (B).[9] Because we agree with the court's determination that the enforcement of the disputed rule fell within the plaintiff's statutory powers, the defendant's second claim fails.

### III

The defendant's final claim is that the court, in calculating the plaintiff's damages, improperly considered

---

[9] Furthermore, General Statutes § 47-244 (c) (1) applies to rules that affect the use or occupancy of units "[u]nless [those rules are] otherwise permitted by the declaration or by this chapter . . . ." Article IX, § 2, of the plaintiff's declaration states that "[n]o [r]esidential [u]nit may be leased by a [u]nit [o]wner other than [d]eclarant except in accordance with the procedures and requirements set forth in the [r]ules and [r]egulations . . . ."

Additionally, article IX, § 1 (e), provides: "The use of [c]ommon [e]lements is subject to the [b]ylaws and the [r]ules and [r]egulation[s] of the [a]ssociation." It is clear that the disputed rule, which relates to the use of common elements, is permitted by the plaintiff's declaration, as it is incorporated by reference into the declaration. The rule is thus authorized by article IX of the plaintiff's declaration as well as by § 47-244 (c) (1) (B).

two matters not alleged in the complaint, namely, debt accrued after the action was commenced and a garage assessment mentioned in the plaintiff's posttrial affidavit. According to the defendant, because the complaint does not allege a continuing failure to pay common charges, the court should not have awarded damages for charges beyond the commencement of the action. The defendant also claims surprise at the garage assessment. We affirm the court's judgment as to all of the charges except the garage assessment. As to that alleged debt, we agree with the defendant and reverse the judgment.

"The interpretation of pleadings is an issue of law. As such, our review of the court's decisions in that regard is plenary. . . . The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citations omitted; internal quotation marks omitted.) *Provenzano* v. *Provenzano*, 88 Conn. App. 217, 225, 870 A.2d 1085 (2005). "The purpose of a complaint . . . is to limit the issues at trial, and . . . pleadings are calculated to prevent surprise. . . . It is fundamental to our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery." (Internal quotation marks omitted.) *Connecticut Education Assn., Inc.* v. *Milliman USA, Inc.*, 105 Conn. App. 446, 460, 938 A.2d 1249 (2008). Our Supreme Court has recognized, however, that "where the trial court ha[s] in fact addressed a technically unpleaded claim that was actually litigated by the parties, it [i]s improper for the Appellate Court to reverse the trial court's judgment for lack of such an amendment [to the complaint]." *Stafford Higgins*

*Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 575, 715 A.2d 46 (1998).

It is axiomatic that "the burden of proving damages is on the party claiming them." *Gargano* v. *Heyman*, 203 Conn. 616, 620, 525 A.2d 1343 (1987). When damages are claimed, they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. *Simone Corp.* v. *Connecticut Light & Power Co.*, 187 Conn. 487, 495, 446 A.2d 1071 (1982). Damages "are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." *Humphrys* v. *Beach*, 149 Conn. 14, 21, 175 A.2d 363 (1961).

## A

The defendant maintains that because the plaintiff's complaint does not cite a continuing failure to pay common charges and late fees, the court should not have awarded damages for charges incurred after the day on which the complaint was served. The complaint contains the following pertinent allegations: "Before, since and including on or about September 1, 2003, the [defendant] ha[s] failed to pay duly authorized common charges pursuant to a periodic budget adopted annually, late fees and other charges duly assessed in accordance with the rules and regulation[s] of the [p]laintiff. As of the date of the [c]omplaint, this amounts to a minimum of $4,213.12 plus costs of collection. . . . Wherefore, the plaintiff claims . . . [a]ttorney's fees and costs pursuant to [§] 47-258 (g) of the Connecticut General Statutes . . . [i]nterest pursuant to Connecticut General Statutes [§] 47-258 [and] [s]uch other and further relief, legal or equitable, as may be required."

At trial, the plaintiff proffered an updated ledger documenting common charges that the defendant had

failed to pay.[10] The court made the following findings. "Through the testimony of . . . Hibbert . . . and the records of [the plaintiff], it was established that on July 1, 2004, [the defendant] owed [the plaintiff] $3936.56, an amount that consisted of two months common charges and late fees, $2225 of fines and $1310 in legal fees. The amounts owed have fluctuated since that time, as fifteen months passed when no common charges were paid. As of June 1, 2006, over $5000 was owed on [the unit] for common charges and late fees. Two large payments by [the defendant] brought the common charges current in December, 2006, but as of the date of trial, the January [2007] common charges were in arrears. There was no contrary evidence presented by [the defendant], and the plaintiff has proven that as of January, 2007, common charges and late fees were owed by [the defendant]."

In light of the record, the court's determination that the plaintiff was entitled to common charges accrued after the date of the July 1, 2004 complaint was appropriate. The issue clearly was litigated. "[A] court may, despite pleading deficiencies, decide a case on the basis on which it was actually litigated . . . ." *Stafford Higgins Industries, Inc.* v. *Norwalk*, supra, 245 Conn. 575.[11] We accordingly reject the defendant' s claim that the court improperly awarded charges accrued after the commencement of the action.

[10] Our examination of the plaintiff's declaration reveals that late fees are included as common expense assessments. Article XIX, § 3, of the declaration states: "(f) Fees, charges, late charges, fines and interest charged against a Unit Owner pursuant to the Instruments and the Act are enforceable as common expense assessments."

[11] At trial, the plaintiff's counsel claimed that the action included common charges that were unpaid as of the trial. The defendant's counsel subsequently objected to the plaintiff's proffer of a ledger documenting debts accrued beyond the date of the complaint. He argued that the trial should concern the "sums of money that are set forth in the complaint and attorney's fees." Referring to the disputed documents as "evidence of a claimed debt," the court overruled the objection.

B

The defendant also submits that the court should not have awarded the plaintiff $882.59 for a garage assessment listed on the posttrial affidavit. Because our careful review of the record reveals that the garage assessment was raised neither in the plaintiff's pleadings nor at trial, we agree that the court should not have included the garage assessment in its calculation of the debt.

The complaint alleges, and the defendant has admitted to, delinquency in the payment of her common charges.[12] Conversely, the $882.59 garage assessment is neither alleged in the complaint nor mentioned in the parties' briefs. Furthermore, the garage assessment was not litigated at trial but appeared in the record for the first time on the affidavit of debt submitted after trial. Whereas the defendant was notified about the accumulating common charges and late fines, we must conclude that she was not warned adequately about the garage assessment.

"Whether a complaint gives sufficient notice is determined in each case with reference to the character of the wrong complained of and the underlying purpose of the rule which is to prevent surprise upon the defendant." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 223–24 n.16, 477 A.2d 988 (1984). The defendant was entitled to receive notice

---

[12] According to the plaintiff's declaration, garage assessments are not included as common charges. Article XIX of the declaration provides. "Common expenses shall include: (a) Expenses of administration, maintenance, and repair or replacement of the common elements." The "common elements" are listed in § 5 of article II of the declaration. They do not include garage space. Garage space is defined, rather, as a "limited common element." See article II, § 18 and article VI. "Garage spaces . . . [are] limited to units to which they are assigned." Moreover, § 7 of article XIX, providing that "all common expenses, other than special assessments, shall be assessed and shall be due and payable in twelve equal monthly installments," distinguishes "assessments" from common expenses.

of the allegation that she owed the garage assessment so that she had an opportunity to refute the plaintiff's evidence in support of that issue and produce evidence to the contrary. See *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 754, 793 A.2d 1118 (2002). Because there are no subordinate factual findings in the record to support the court's determination that the plaintiff is entitled to the garage assessment, we conclude that the court improperly awarded the plaintiff damages in the amount of $882.59.

The judgment is reversed only as to the award of $882.59 for the garage assessment and the case is remanded with direction to render judgment as on file except as modified to eliminate those damages.

In this opinion the other judges concurred.