******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# VILLWELL BUILDERS I, LLC *v.*
# PHIL PEREIRA ET AL.

# VILLWELL BUILDERS I, LLC *v.*
# ANDREW BIAGIONI ET AL.

# VILLWELL BUILDERS I, LLC *v.*
# JULIA WEXLER

# VILLWELL BUILDERS I, LLC *v.*
# KARRIE SADLER
## (AC 48053)

Clark, Seeley and Eveleigh, Js.

*Syllabus*

The plaintiff home improvement contractor appealed from the trial court's judgments for the defendant condominium owners on their respective counterclaims for breach of contract and negligence. The plaintiff had commenced a separate action for, inter alia, breach of contract against the owners of each of four condominium units following the owners' termination of contracts to construct decks for their units. Prior to trial, the plaintiff withdrew its complaint in each case, and the court consolidated the cases for trial on the defendants' counterclaims. On appeal, the plaintiff claimed, inter alia, that the court improperly found that it had materially breached the contracts it had entered with the respective defendants. *Held*:

The trial court's finding that the plaintiff had materially breached the contracts was not clearly erroneous, as the court's finding that the delay in construction was a material breach was supported by the evidence in the record even though the contracts did not specifically provide that time was of the essence in the completion of the construction projects.

The trial court improperly calculated the amount of damages that the defendants could recover on their breach of contract counterclaims because the defendants did not incur losses for which they could recover in contract, as the court expressly found that no defendant paid more than the original contract price for the completion of the work called for under the contracts, and, accordingly, this court vacated the damages awards and remanded the cases with direction to enter awards of nominal damages on the breach of contract counterclaims.

To the extent that the trial court's damages awards included any amounts attributable to its finding that the plaintiff breached the implied covenant of good faith and fair dealing, the court erred in issuing those awards, as the defendants neither pleaded a claim for such a breach or alleged conduct

by the plaintiff that would support such a claim, and, accordingly, this court vacated any such damages awards.

Argued September 15, 2025—officially released January 6, 2026

*Procedural History*

Action, in each of four cases, to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Waterbury, where the defendants filed counterclaims; thereafter, the court, *Cordani, J.*, granted the defendants' motion to consolidate the cases for trial; subsequently, in each case, the plaintiff withdrew its complaint; thereafter, the cases were tried to the court, *M. Rodriguez, J.*; subsequently, the court, *M. Rodriguez, J.*, recused itself; thereafter, in each case, the court, *Cordani, J.*, rendered judgment in part for the defendants on their counterclaim, from which the plaintiff appealed to this court. *Reversed in part*; *judgments directed.*

*Michael S. Wrona*, for the appellant (plaintiff).

*Eddi Z. Zyko*, for the appellees (defendants).

*Opinion*

CLARK, J. The present appeal arises out of four separate actions commenced by the plaintiff home improvement contractor, Villwell Builders I, LLC, against the defendant condominium owners, Linda Biagioni, Andrew Biagioni, Phil Pereira, Gina Pereira, Karrie Sadler and Julia Wexler. The four cases were consolidated for trial. The plaintiff appeals from the judgments rendered by the trial court in favor of the defendants on their respective counterclaims for breach of contract and negligence. On appeal, the plaintiff claims that the court improperly (1) found that the plaintiff materially breached the contracts by and between the plaintiff and the respective defendants regarding certain construction

work to be completed on their condominiums; (2) calculated damages on the breach of contract counterclaims; and (3) found that the plaintiff breached the implied covenant of good faith and fair dealing and awarded damages on the claim when no such claim was pleaded.[1] We conclude that, although the trial court's finding that the plaintiff breached the contracts was not clearly erroneous, it improperly calculated damages for the breach of contract counterclaims. We therefore reverse the judgments of the trial court as to the awards of damages, vacate those awards, and remand the cases with direction to award nominal damages to the defendants on their breach of contract counterclaims.

The following facts and procedural history are relevant to the resolution of this appeal. The plaintiff is a home improvement contractor licensed in Connecticut. The defendants own condominiums in Beach Shore Village in Milford. Between October, 2020, and May, 2021, the plaintiff entered into four separate written contracts with each of the defendant condominium owners pursuant to which the plaintiff promised to provide materials and services for the construction of a second floor deck and an entrance and door leading from the interior of each of the four condominiums to the newly constructed decks. The contracts each included the following provision: "Work shall commence on TBD and shall be completed by within [thirty]

---

[1] The plaintiff also claims that the court erred in awarding inconvenience damages on the defendants' negligence counterclaims. Although the court rendered judgment in each case on both the breach of contract and negligence counterclaims and stated that it was awarding damages in the "aggregate," it is clear from the memoranda of decision that the court awarded damages only on the breach of contract counterclaims. The court found that the proper measure of damages on the breach of contract claims was "equal to the amount of money paid by the [defendants] to [the plaintiff]" and, in each case, rendered judgment in the amount they paid the plaintiff under the respective contracts. See footnote 4 of this opinion. As a result, we need not address the plaintiff's claim that the court erred in awarding inconvenience damages on the defendants' negligence counterclaims.

days, so long as there are no delays due to receipt of materials, labor men, service suppliers and/or acts of God.''

Before the plaintiff could commence work, the defendants first needed to obtain approvals from their condominium association and the plaintiff needed to obtain building permits from the city of Milford (city). Each of the contracts provided that an initial deposit was due upon signing, a second amount was due upon approval of the respective project by the condominium association and the issuance of a permit for the project by the city, and the final amount was due upon completion of the project. The approvals were obtained from the condominium association in February, 2021. Subsequently, in April, 2021, the plaintiff obtained from the city's building official permits for three of the four decks. Although the plaintiff could have obtained building permits for both the decks and the construction and installation of the entrances and doors for each of the four condominiums, it instead elected to obtain permits only for the decks at that time. The defendants each paid the amounts due upon contract signing and upon approval by the condominium association and the issuance of the permits by the city, which constituted approximately one half of the total contract price. The plaintiff commenced work on all four of the decks in May, 2021.[2] The decks were built together as a group, rather than one at a time. The plaintiff worked on each phase of construction for all four of the decks before moving on to the next phase of construction for the four decks.

Although the plaintiff's representative, John Rainville, testified at trial that the decks were substantially

---

[2] At trial, the plaintiff admitted that it did not obtain a building permit for the deck to Wexler's condominium until after commencing work on that deck.

completed in July, 2021, additional work was required after that time in order to obtain the approval of the city's building inspector. The decks eventually passed inspection on September 15, 2021, but only after failing to pass prior inspections. Additionally, by the end of July, 2021, and notwithstanding the provisions of the contracts requiring all work to be completed within thirty days, the plaintiff still had not sought or obtained from the city the necessary permits for the construction and installation of the entrances and doors and, thus, had not begun work on that phase of the projects. The defendants terminated the contracts in early August, 2021, before the plaintiff began work on the entrances and doors.

Following their termination of the contracts, the defendants refused to pay the plaintiff any outstanding amounts due under the respective contracts.[3] Nevertheless, the plaintiff continued to work on the decks until it obtained the final approvals from the city in September, 2021.

The defendants, meanwhile, retained another home improvement contractor, Magilla Construction (Magilla), to complete the projects. Magilla obtained permits for the construction of the entrances and installation of the doors from the city in August, 2021. Magilla completed that work, and the city eventually approved the

[3] The undisputed facts presented at trial and the findings of the trial court indicate the following contract prices and payments. The Biagionis' total contract price with the plaintiff to build the deck and entrance and door was $16,500. The Biagionis paid the plaintiff $8000 and paid Magilla Construction (Magilla) $7900 to complete the entrance and door, totaling $15,900. The Perieras' total contract price with the plaintiff was $16,500, and they paid $8250 to the plaintiff and $6500 to Magilla to complete the entrance and door, totaling $14,750. Wexler's total contract price with the plaintiff was $19,500, and she paid $9750 to the plaintiff and $7000 to Magilla to complete the entrance and door, totaling $16,750. Sadler's total contract price with the plaintiff was $18,300, and she paid $9150 to the plaintiff and $7000 to Magilla to complete the entrance and door, totaling $16,150.

work for all four condominium units: three of the entrances and doors were approved on October 19, 2021, and one was approved in December, 2021.

On April 6, 2022, the plaintiff commenced each of these actions against the defendants by way of a two count complaint sounding in breach of contract and quantum meruit, claiming that the defendants each owed the plaintiff the unpaid amounts due under the respective contracts. On November 2, 2022, the defendants in each action filed an identical answer, special defenses, and counterclaims. In their answers, the defendants denied that they had breached the contracts or that they owed the plaintiff any money for the work it had performed. The plaintiff eventually withdrew its complaints before trial, leaving only the defendants' counterclaims for (1) breach of contract, (2) negligence, (3) negligent infliction of emotional distress, and (4) violations of the Connecticut Unfair Trade Practice Act (CUTPA), General Statutes § 42-110a et seq. In their counterclaims for breach of contract, negligence, and negligent infliction of emotional distress, the defendants alleged, in sum, that the plaintiff had done substandard work, failed to obtain proper permits and materials, failed to complete the work within the time frame required under the contract and did not communicate with the defendants concerning the projects, resulting in significant costs to finish and repair the projects, legal costs, emotional distress and loss of the enjoyment of life. In their CUTPA counterclaims the defendants alleged that the plaintiff's conduct as described in the first three counterclaims violated CUTPA, as it was "illegal, violative of the common law and established concepts of unfairness, immoral, oppressive and unscrupulous and caused substantial injury" to the defendants.

The cases were consolidated for trial on April 1, 2024, and the counterclaims were tried before the court, *M.*

*Rodriguez, J.*, on June 3, 2024. The defendants presented testimony from (1) Rainville, a member of the plaintiff, (2) Jill Bartone, the owner of Magilla, (3) Charles Corell, the chief building inspector for the city, (4) Wexler, and (5) Linda Biagioni. The plaintiff's sole witness was Rainville. The following exhibits were admitted: (1) an email exchange between the plaintiff and Linda Biagioni and (2) materials from Corell pertaining to the projects, including building permit applications, issued building permits, inspection histories, and approval certificates. After trial, Judge Rodriguez recused herself, and the parties agreed to have another judge decide the cases on the basis of the written record from trial and the parties' posttrial briefs.

On September 5, 2024, the court, *Cordani, J.*, issued four separate memoranda of decision. The language and analyses of the memoranda of decision were largely identical. In each decision, the court rendered judgment for the defendants on their counterclaims for breach of contract (count one) and negligence (count two) and awarded damages in the amount that each had paid to the plaintiff.[4] The court rendered judgment in favor of the plaintiff with respect to the counterclaims alleging negligent infliction of emotional distress (count three) and CUTPA (count four).

In its memoranda of decision, the court concluded: "The [plaintiff] breached the terms of its agreement[s] with the [defendants] by failing to timely perform the agreed upon work, by doing substandard work, by failing to order the proper materials and by failing to maintain a safe and reasonable work area around the [condominiums]. The [plaintiff] breached the implied covenant

---

[4] The one exception is that the court awarded Sadler $9750, even though Sadler paid the plaintiff only $9150. Nothing in the court's memorandum of decision explains this discrepancy and we assume it is a scrivener's error. In light of our resolution of the plaintiff's challenge to the court's damages awards, however, the discrepancy is immaterial for purposes of this appeal.

of good faith and fair dealing by using a contract that did not comply with the Connecticut Home Improvement Contractors Act [(Home Improvement Act), General Statutes § 20-418 et seq.] and by failing to reasonably communicate with the [defendants]. The [plaintiff] failed to complete the work, thereby requiring the [defendants] to hire a substitute contractor to complete the work. The total cost to the [defendants] of completing each job, including the cost of the substitute contractor, did not exceed the price that each would have paid under the contracts with [the plaintiff]. However, completing the jobs required extra time, extra effort by each [defendant], and extreme inconvenience and frustration by each."

On the basis of these findings the court concluded "that [the plaintiff] breached its contract[s] with the [defendants]" and that the defendants had "proven that the [plaintiff] was negligent in carrying out its duties." The court further concluded that "the proper measure of damages on the breach of contract claim[s] [was] equal to the amount of money paid by the [defendants] to the [plaintiff]." Although the court rendered "judgment for [each of the defendants] on counts one and two of the counterclaim[s]" and purported to award "aggregate damages" on those counts to the defendants, it ultimately awarded damages in the same amount it concluded each was entitled to for their breach of contract counterclaims, i.e., the amount each had paid the plaintiff under the respective contracts.[5]

This appeal followed. Additional facts will be set forth as necessary.

## I

We first address the plaintiff's claim that the court erred in finding that the plaintiff had materially

---

[5] See footnote 4 of this opinion.

breached the contracts "by failing to timely perform the agreed upon work, by doing substandard work, by failing to order the proper materials and by failing to maintain a safe and reasonable work area around the [condominiums]."[6] We disagree and conclude that there is sufficient evidence to support the court's finding of a material breach.[7]

"We first set forth the general rule regarding the review of breach of contract claims. The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Regional School District 8* v. *M & S Paving & Sealing, Inc.*, 206 Conn. App. 523, 531, 261 A.3d 153 (2021).[8]

---

[6] The plaintiff's principal appellate brief presents this claim as its third claim of error. We address it first because, if we determine that the court erred in finding that the plaintiff breached the contracts, it would render moot the plaintiff's claims challenging the court's damages awards for those breaches.

[7] Although the court did not explicitly state that the plaintiff committed a "material" breach, that finding is implicit in its judgments for the defendants, all of whom had terminated their respective contracts with the plaintiff. It is well settled that only a material breach excuses further performance of a contract and that a party may not recover for breach of contract unless he or she has fully performed under it. See *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 76, 38 A.3d 1212 (2012) (party in breach of contract has no legal right to recover under it); *Shah* v. *Cover-It, Inc.*, 86 Conn. App. 71, 77, 859 A.2d 959 (2004) (material breach excuses "further performance under the contract" by nonbreaching party and "[o]ne cannot recover upon a contract unless he has fully performed his own obligation under it" (internal quotation marks omitted)).

[8] Although the procedural history of this case is unique, insofar as it was decided by a judge who did not preside over the trial but, instead, reviewed the transcripts, documentary evidence and posttrial briefs, the parties to this appeal agreed to that procedure and do not argue on appeal that such

A breach is material if it "goes to the root or essence of the contract . . . ." (Internal quotation marks omitted.) *Reserve Realty, LLC* v. *Windemere Reserve, LLC*, 205 Conn. App. 299, 331, 258 A.3d 711 (2021), aff'd, 346 Conn. 391, 291 A.3d 64 (2023). "In *Bernstein* v. *Nemeyer*, 213 Conn. 665, 672, 570 A.2d 164 (1990), our Supreme Court approved the multifactor standards for materiality contained in § 241 of the Restatement (Second) of Contracts. [See 2 Restatement (Second), Contracts § 241, p. 237 (1981).] In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." (Internal quotation marks omitted.) *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 125–26, 682 A.2d 572, cert. denied, 239 Conn. 949, 686 A.2d 126 (1996), and cert. denied, 239 Conn. 950, 686 A.2d 126 (1996).

"The standards of materiality [are] to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. [Section 241 of the Restatement (Second) of Contracts] therefore

circumstances warrant a less deferential standard of review of the court's factual findings.

states circumstances, not rules, which are to be considered in determining whether a particular failure is material." (Internal quotation marks omitted.) *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 60, 829 A.2d 102 (2003).

"[When] a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intended that time for performance be of the essence. . . . [When] the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent." (Citation omitted; internal quotation marks omitted.) *Pack 2000, Inc.* v. *Cushman*, 311 Conn. 662, 688, 89 A.3d 869 (2014); see, e.g., *United Cleaning & Restoration, LLC* v. *Koskerides*, 234 Conn. App. 401, 419–21, 343 A.3d 830 (2025) (where time for performance was stated in contract but there was no express time is of essence clause, trial court did not err in concluding that plaintiff's substantial completion of work within reasonable time after time stated in contract constituted substantial performance because court made no finding that parties "intended for time to be of the essence"); *Mihalyak* v. *Mihalyak*, 11 Conn. App. 610, 616–17, 529 A.2d 213 (1987) (in absence of contractual language stating that time stated in agreement was of essence, court considered testimony as to parties' intent).

Thus, where time is not of the essence, the question becomes whether the time for completion was reasonable, which is a question of fact. *Northeast Electrical Contractors* v. *Udolf*, 1 Conn. App. 169, 172, 469 A.2d 419 (1984) ("[t]he particular amount of time which is a reasonable period of time is a question of fact to be determined by the trier"). Whether the time for completion is reasonable is based on the surrounding circumstances. See *Christophersen* v. *Blount*, 216 Conn. 509, 513, 582 A.2d 460 (1990).

At trial, Rainville testified that the plaintiff began construction on all of the decks in "mid-May," 2021, and that the plaintiff "ordered the materials [at the] beginning of April," 2021, but "[t]here [were] supply chain issues" and "[i]t was very difficult to get the materials that [they] needed." He testified that the decks were completed in July, 2021, but that "[t]he doors were not installed" at that time because, although the plaintiff had ordered "hurricane rated doors" from Home Depot because the properties were "on the water," Home Depot delivered doors that did not meet those specifications. Rainville further testified that the plaintiff told the defendants about the issue with the doors but never got "a chance to order the correct doors" because the defendants "terminated" the contracts in the first few days of August.

Wexler and Linda Biagioni testified that they terminated the contracts, in part, because of the delays and the plaintiff's failure to obtain proper materials. Wexler testified that she terminated her contract with the plaintiff because "[i]t was . . . over 120 days from when [she] signed the contract. The railings and the posts were incorrect. They had no permit for [her] doors . . . and the doors that they were going to put in . . . were not to code, [and] would not have been safe," and the plaintiff "never had a conversation [with her] about the [doors]" to explain that incorrect doors were sent and had to be replaced. She further testified that she tried more than fifteen times "to get communication from [the plaintiff]" and that she "would have liked a conversation to tell [her] how long it would take if it was going to extend longer than what was in [her] contract. And there was no communication."

Linda Biagioni testified that, after signing the contract in October, 2020, she "expected [the deck] to be done before winter" and that she terminated the contract in part because work "didn't actually start until [May 18,

2021] . . . and by the end of July [2021], [she and her husband] realized that . . . [the plaintiff] had not gotten a permit from the [city] to install the doors and . . . had bought the wrong doors . . . . So, by that time, it was July 30th, you know, the thirty day promise was way gone, and [she and her husband] didn't see . . . any end in sight at that point. So, the neighbors and [Linda Biagioni] discussed what to do, and [they] felt that the best thing to do was to cancel the contract[s] and hire a new contractor. And that's what [they] did."

The contracts at issue required all of the work to be completed within thirty days from when the work commenced, "so long as there [were] no delays due to receipt of materials, labor men, service suppliers and/or acts of God." Because the contracts do not include provisions stating that time is of the essence, the question for the court was whether there was an unreasonable delay caused by something other than the delays expressly contemplated by the contracts that constituted a material breach justifying termination of the contracts.

Our review of the record leads us to conclude that the court's finding that the delay was a material breach was not clearly erroneous. The plaintiff started work on the decks in May, 2021. Each contract required the work to be completed within thirty days after work commenced, "so long as there [were] no delays due to receipt of materials, labor men, service suppliers and/or acts of God." By the end of July, 2021, the plaintiff still had not obtained permits for the construction of the entrances and installation of the doors. Although the plaintiff attributed the delays to supply chain issues and an error by Home Depot in connection with the purchase of the doors, the court was not required to credit that testimony, especially in light of the fact that the plaintiff had failed to obtain permits for the

entrances and doorways, much less to commence work on that phase of the projects, by the time the defendants terminated the contracts. Moreover, although Rainville testified that the decks had been completed in July, 2021, there was evidence that the plaintiff continued to work on the decks through September, 2021, when the decks were finally approved by the building inspector.

Under such circumstances, we are unable to conclude that the court committed clear error in finding a material breach due to unreasonable delays even though the contracts did not include provisions stating that time was of the essence. See, e.g., *DeMattio* v. *Plunkett*, 199 Conn. App. 693, 710–13, 238 A.3d 24 (2020) (trial court's finding that, although parties' contract did not specify that time was of essence, contractor's completion of "only 50 percent of the [home improvement] project between May and October, 2015, when the contract called for nine weeks of total work beginning in March, 2015, resulted in a material breach of the contract" was not clearly erroneous). There is evidence in the record to support the court's finding, and we are not left with the definite and firm conviction that a mistake was committed.

Accordingly, we affirm the court's judgments for the defendants on count one of their counterclaims asserting a breach of contract.[9]

---

[9] Although the plaintiff also challenges the court's finding of material breach based upon substandard work and a failure to maintain a safe and reasonable work area, we need not determine whether those findings were clearly erroneous because the court's finding that the plaintiff's delay in performance was unreasonable is alone sufficient to support its conclusion that the plaintiff materially breached the contracts. Moreover, for the reasons set forth in part II of this opinion, our resolution of the plaintiff's challenge to the court's damages award does not require us to determine whether the plaintiff materially breached the contracts by performing substandard work or creating an unsafe or unreasonable work area.

II

The plaintiff next claims that the trial court improperly calculated the damages that the defendants could recover for their breach of contract counterclaims. Specifically, the plaintiff contends that, because the trial court found that "[t]he total cost to the [defendants] of completing each job, including the cost of the substitute contractor, did not exceed the price that each would have paid under the contracts with [the plaintiff]," the court erred when it awarded damages equal to what each of the defendants paid the plaintiff for the work it performed. We agree that the court improperly calculated damages for the breach of contract counterclaims.

"Although the calculation of the amount of damages is a factual determination, the formula used in making that calculation is a question of law. . . . Thus, [w]e accord plenary review to the [trial] court's legal basis for its damages award." (Citation omitted; internal quotation marks omitted.) *Fezollari* v. *Jauzovic*, 232 Conn. App. 20, 37–38, 335 A.3d 861 (2025); see also *Ray Weiner, LLC* v. *Connery*, 146 Conn. App. 1, 7, 75 A.3d 771 (2013) ("It is well settled that [t]he trial court has broad discretion in determining damages . . . . When, however, a damages award is challenged on the basis of a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.)).

"As a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place [it] in the same position [it] would have been in had the contract been properly performed. . . . Such damages are measured as of the date of the breach. . . . For a breach of a construction contract involving defective or unfinished construction, damages are measured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does

not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." (Internal quotation marks omitted.) *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, 112 Conn. App. 511, 529, 963 A.2d 676 (2009).

"Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach. . . . The concept of actual loss accounts for the possibility that the breach itself may result in a saving of some cost that the injured party would have incurred if he had had to perform. . . . In such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is, subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages. . . . It is on this ground that . . . when an owner receives a defective or incomplete building, any part of the price that is as yet unpaid is deducted from the cost of completion that is awarded to him . . . . Otherwise, the owner would be placed in a better position than full performance would have put him, thereby doubly compensating him for the injury occasioned by the breach." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 8, 961 A.2d 373 (2009).

With these principles in mind, we turn to the damages awarded in the present cases. The trial court expressly found that no defendant paid more than the original contract price for the completion of the work called for under the contracts.[10] Nevertheless, it concluded that "completing the jobs required extra time, extra

[10] The parties do not dispute this finding, and it is supported by the record.

effort by each [defendant], and extreme inconvenience and frustration by each," and, on the basis of that finding, the court awarded each of the defendants the full amounts they had paid the plaintiff under their respective contracts. It did so without reference to the original contract price or the total amount it cost each of the defendants to complete the work.

We are unaware of any authority supporting an award for the type of inconvenience damages the trial court appears to have awarded the defendants for their breach of contract counterclaims. Consistent with the authorities we have set forth herein, and in order to place the defendants in the same position they would have been had the contract been properly performed, the court should have subtracted any unpaid amounts remaining on the contracts with the plaintiff from the costs incurred by the defendants to complete or repair the projects, so as to avoid placing the defendants in a better position than they would have been in had the plaintiff fully performed the contracts. Had the court performed the appropriate calculation, it would have found that the defendants did not incur losses for which they could recover in contract. Accordingly, we conclude that the court's award of damages on the breach of contract counterclaims was improper. We therefore reverse the decisions of the trial court with respect to its awards of damages, vacate those awards, and remand the cases with direction to enter awards of nominal damages.[11]

---

[11] See *Lydall, Inc.* v. *Ruschmeyer*, 282 Conn. 209, 254, 919 A.2d 421 (2007) (finding that plaintiff was "entitled to nominal damages . . . under its breach of contract claim" because it "could point to no pecuniary damages"); *Bruno* v. *Whipple*, 186 Conn. App. 299, 316–17, 199 A.3d 604 (2018) (finding of liability for breach of contact entitles nonbreaching party to nominal damages if actual damages are not proven), cert. denied, 331 Conn. 911, 203 A.3d 1245 (2019).

### III

We next address the plaintiff's claim that the trial court improperly awarded damages on the basis of its finding that the plaintiff violated the implied covenant of good faith and fair dealing even though the defendants did not assert any such claim. Specifically, the plaintiff maintains that, because the defendants' counterclaims do not assert a claim that the plaintiff breached the implied covenant of good faith and fair dealing and because the defendants never alleged or presented evidence to support a claim that the plaintiff acted in bad faith, with dishonest purpose or sinister motive, the court erred when it went "well beyond the scope of the pleadings" and "awarded damages based on the covenant of good faith and fair dealing." Although it is clear that the court did not render judgment on any unpleaded claims for breach of the implied covenant of good faith and fair dealing, we nonetheless conclude that, to the extent that the court's damages awards included any amounts attributable to its finding that the plaintiff committed such a violation, the damages awards must be vacated.

"The interpretation of pleadings is an issue of law. As such, our review of the court's decisions in that regard is plenary. . . . The allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . The purpose of a complaint . . . is to limit the issues at trial, and . . . pleadings are calculated to prevent surprise. . . . It is fundamental to our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Our Supreme Court has recognized, however, that

where the trial court ha[s] in fact addressed a technically unpleaded claim that was actually litigated by the parties, it [i]s improper for the Appellate Court to reverse the trial court's judgment for lack of such an amendment [to the complaint]." (Citations omitted; internal quotation marks omitted.) *Stamford Landing Condominium Assn., Inc.* v. *Lerman*, 109 Conn. App. 261, 271, 951 A.2d 642, cert. denied, 289 Conn. 938, 958 A.2d 1246 (2008).

"To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract *must have been taken in bad faith. . . .* Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Emphasis in original; internal quotation marks omitted.) *TD Bank, N.A.* v. *J & M Holdings, LLC*, 143 Conn. App. 340, 348, 70 A.3d 156 (2013). "[A] plaintiff cannot state a claim for breach of the implied covenant simply by alleging a breach of the contract, in and of itself." (Internal quotation marks omitted.) Id., 349.

Although the court did not expressly render judgment for the defendants on a claim for a violation of the implied covenant of good faith and fair dealing, it did find that the plaintiff "breached the implied covenant of good faith and fair dealing by using a contract that did not comply with the [Home Improvement Act] and by failing to reasonably communicate with the [defendants]." The defendants neither pleaded a claim for breach of the implied covenant of good faith and fair dealing nor alleged conduct by the plaintiff that would

support such a claim. Accordingly, we conclude that, to the extent the trial court's damages awards included any amounts attributable to its finding that the plaintiff breached the duty of good faith and fair dealing, the damages awards must be vacated.

The judgments are reversed only as to the awards of damages, those damages awards are vacated, and the cases are remanded with direction to award nominal damages solely on the breach of contract counterclaims; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.